237 So.2d 656

David LEE et al.

v.

Dannie H. MOXLEY, Individually, etc., et al.

4 Div. 347.

Supreme Court of Alabama.

June 18, 1970.

Charles J. Kettler, Jr., Luverne, for appellants.

Ben H. Lightfoot, Luverne, Martin, Balch, Bingham, Hawthorne & Williams, Montogmery, for appellees.

PER CURIAM.

Appellants are beneficiaries under the will of their grandfather, J. J. Moxley.

They seek to review decrees of the Circuit Court of Crenshaw County, in Equity, which are dated May 31, 1968, and December 14, 1968. The first decree orders the distribution of some money belonging to the Moxley estate; the second is a decree on motion for rehearing. Appellee Dannie H. Moxley is the executrix of her grandfather's will and also a beneficiary thereunder, along with the other appellees. One of the appellants, Billy Lee, was overpaid by a decree which was vacated and set aside before further distribution was made thereunder. To insure recovery of this overpayment, the trial court, on motion for rehearing, entered its decree of December 14, 1968.

The procedure leading up to these two decrees is somewhat extended and the facts involved should be stated so far as they are pertinent to the issues presented by the argued assignments of error.

Testator, J. J. Moxley, father and grandfather of the parties to this appeal, hired the professional services of an excellent lawyer to draft a will which contains seven items or paragraphs. Later, he executed a codicil, drafted by the same attorney, by which Item Four of the will was revoked and a substitution (Item One) made therefor.

Most of the subject matter of testator's estate here involved consisted of several hundred acres of land upon which timber was growing. The codicil willed the residue of testator's estate (which included the land) to his wife during her life and at her death to his grandson, Daniel Newton Moxley, child of his deceased son, J. C. Moxley, and to his five other children (naming them) subject to conditions, limitations and restrictions as follows:

"(a) It is my will that said property shall be kept together and intact until the death of my last surviving child for the common benefit and enjoyment of my living children and the issue of the deceased ones, share and share alike.

"(b) It is my will that during the period of time from the death of my wife until the death of the last surviving child my executors, hereinafter named in Item Six of my last will and testament, shall have full and complete charge, management, and supervision of said property and the business and farming operations incident thereto, and shall continue my business and farming operations for the common benefit and enjoyment of the parties hereinabove named and designated in this item. My said executors shall, during said period, pay all taxes and charges against said property and all the expenses of the business and farming operations of my estate, and all expenses of maintaining, preserving, protecting and keeping up the property of my estate out of the proceeds of the business and farming operations thereof, and shall divide the balance thereof each year among the parties hereinabove designated in this paragraph, share and share alike.

"(c) It is my will that on the death of my last surviving child the title to said property shall vest absolutely and unconditionally in the issue of my six children, viz: J. C. Moxley, Alva D. Quarles, Bessie Mae Law, Dannie H. Moxley, Ben Moxley and Mary Alice Lee, share and share alike.

"(d) If any of my children should die without issue before my wife, then my other children or their issue shall have the share of said child, equally and jointly, and if any of my children should die at any time without issue then the interest of said child without issue shall go to my other children, or their issue.

"(d) [sic]. In case my grandson, Daniel Newton Moxley, hereinabove mentioned, shall die without issue before the death of my last surviving child, then his interest shall go to the surviving children or their issue."

The Fourth Item of the will, prior to the codicil, reads as follows:

"I will, devise and bequeath all the rest and residue of my estate, real, personal and mixed, to my wife during her life and at her death to the following, viz: Daniel Newton Moxley, the child of my deceased son, J. C. Moxley, and my children, Alva D. Qualls, Bessie Mae Law, Dannie H. Moxley, Ben Moxley and Mary Alice Lee, to be held by them jointly and in common, share and share alike, subject to the following conditions, limitations and restrictions:

"(a). It is my will that said property shall be kept together and intact until the death of my last surviving child for the common benefit and enjoyment of my living children and the issue of the deceased one, share and share alike.

"(b). It is my will that on the death of my last surviving child the title to said property shall vest absolutely and unconditionally in the issue of my six children, viz: J. C. Moxley, Alva D. Quarles, Bessie Mae Law, Dannie H. Moxley, Ben Moxley, and Mary Alice Lee, share and share alike.

"(c). If any of my children should die without issue before my wife, then my other children or their issue shall have the share of said child, equally and jointly, and if any of my children should die at any time without issue then the interest of said child shall go to my other children or their issue.

"(d). In case my grandson, Daniel Newton Moxley, hereinabove mentioned, shall die without issue before the death of my last surviving child, then his interest shall go to my surviving children or their issue."

As we view the record, Mary Alice Lee (testator's child) died leaving appellants as her issue. Date of her death is not shown. Also Ben Moxley died (date not shown), leaving a son, Ben Moxley. The following children survive: Dannie Hugh Moxley, Mrs. Jesse Law, and Mrs. Alva D. Qualls. J. C. Moxley was dead on the execution of the will, leaving a son, Daniel Newton Moxley.

Executrix of the will, Dannie H. Moxley, in her official capacity and also as an individual, filed her petition in the Circuit Court of Crenshaw County, in Equity, on July 27, 1967, making all testator's surviving children and the issue of his deceased children parties respondent. Briefly, the bill alleges that testator left 620 acres of land (describing the same), most of which is covered in timber and pulpwood, and that a large part of the saw timber was going to waste and ruining from age, and that beavers had built dams and flooded many acres of timber, which is dying and wasting entirely; that said timber should be sold and the proceeds of sale distributed among the beneficiaries named in the will and codicil. Decrees pro confesso were taken against all of the respondents except appellants (children of the deceased Mary Alice Lee), who filed answers.

On oral testimony, not shown in the record here, the trial court ordered some of the timber sold after notice. The Register's report shows that the timber (above six inches in diameter) was sold for $51,-129.51. The sale was confirmed and reference held. Attorneys' fees and commissions were allowed.

The Chancellor, on February 23, 1968, after reserving $5,000 to be paid the executor for maintenance, repairs, taxes, insurance and general upkeep of the premises, also after deducting costs, ordered the net proceeds paid one-ninth to each person named as beneficiary.

The trial court on March 8, 1968, ordered the decree of February 23, 1968, *supra,* vacated and set aside.

On April 9, 1968, respondents Mrs. Jesse Law, Mrs. Alva Qualls and Ben Moxley filed a petition that each be paid one-sixth of the money or net proceeds derived from the sale.

It appears that on April 29, 1968, the deposition of the attorney who drafted the

will was taken. All the beneficiaries of the will were represented at this hearing by their respective lawyers. The deposition was taken before a court reporter in question and answer form. It was agreed that the deposition was pursuant to notice. It was also agreed by and between the attorneys representing the parties that the deposition "is taken pursuant to the provisions of Act 133 [sic], Special Act of the Legislature (474–1–18 Code of Alabama) [Title 7, §§ 474(1)–474(18), 1958 Recompilation] * * *; that objections to questions other than objections to the form of the questions, need not be made at this time, but may be reserved for a ruling at such time as the depositions may be offered in evidence or used for any other purpose by either party, provided for by the statute."

The following questions and answers appear in the deposition:

"Q. (continuing)—he used the words, 'that said property shall be kept together and intact until the death of my last surviving child for the common benefit and enjoyment of my living children and the issue of the deceased ones, share and share alike.' What was his intent, if you know, as to that particular provision?

"A. I know his intent, and it was my intent in drafting this particular provision, that the issue of any deceased child should take the share of that particular deceased child.

"Q. In other words, are you saying that the share and share alike means among the issue of the deceased child?

"A. I might say, to clarify that, in the first sentence or first lines of Item 1, he names six persons, one, the child of his deceased son, and five children. In drafting that provision the share of each child was considered a unit, and the issue to take in substitution of any deceased child, and no more. You might say that the issue was to take per stirpes, but I call your attention to the fact that

there was an express devise to J. C. Moxley, Alva D. Quarles, Bessie Mae Law, Dannie H. Moxley, Ben Moxley and Mary Alice Lee, which was to take effect upon the death of his wife or his widow, Alice Moxley. That was vested in those six. And, anything that issue was to take, of any deceased child, would be a substitution only for the deceased child."

A copy of decedent's will and his codicil thereto were attached to the deposition as an exhibit.

On May 29, 1968, a note of testimony on submission of the cause was executed and filed. Complainant noted the deposition of the attorney-witness who drew the will and codicil. No testimony was noted by the children of Mrs. Lee, deceased, who are the appellants here. In fact, the note of testimony, signed by the attorney for appellants, said, "Defendant, being called, offers the following testimony, to-wit: 1st. None."

The Chancellor, on May 31, 1968, recited in his decree:

"This cause being submitted for decree of distribution of the proceeds from the sale of timber, and the court having heard the arguments of counsel for the respective parties, and having considered the testimony noted by the Register, makes the following findings of facts:

"1. That the last will and testament of J. J. Moxley, deceased, as concerns this distribution is ambiguous and testimony of his intention is necessary for a determination.

"2. That the testimony of [we omit name], the attorney who drafted the last will and testament of J. J. Moxley, deceased, is clear that it was the intention of said J. J. Moxley that this type distribution should be per stirpes rather than per capita."

The court then decreed a distribution of the net proceeds of one-sixth each to Dannie Hugh Moxley, Ben Moxley, Mrs. Jesse Law, Mrs. Alva Qualls and Dan Moxley; one twenty-fourth each to David Lee, Harold Lee, Billy Lee and Gerald Lee. All other matters were reserved.

We are in accord with the trial court that the will, as it relates to a distribution of the money here involved, is ambiguous and testimony of the attorney was admissible for a determination of testator's intention. There was no objection made to the court's consideration of the deposition noted and this case was not tried under the provisions of Act 101, approved June 8, 1943, General Acts 1943, p. 105, but in accordance with an agreement of counsel for the parties to the effect that matters contained in the depositions should be considered by the trial court unless an objection was interposed before submission for final decree. It is clear from this testimony that a per stirpes and not a per capita distribution was intended. A decree was entered accordingly. This decree, in our opinion, is final in its perspective. The intention of testator with reference to disposition of his land is not before this court, nor was the same before the trial court. We confine this opinion to the issue relating to the disposition of the money.

It appears that Billy Lee, the son of Mrs. Mary Alice Lee, the deceased daughter of testator, was paid one-ninth of the money pursuant to the trial court's decree of February 23, 1968, which was vacated and set aside. Although demand was made, Mr. Lee refused to reimburse the Register for the overpayment. This refusal resulted in a judgment or decree against him for repayment of such excess. This decree will be mentioned later on.

Four of the devisees named in the will, Mrs. Jesse Law, Ben Moxley, Mrs. Alva D. Qualls and Dan Moxley, filed their motion on July 30, 1968, in which they alleged that prior to May 31, 1968 (the date of the final decree), Billy Lee was paid $4,326.42,

and that he was legally entitled to only $1,620.04; that he refused to refund the excess of $2,706.35. They moved the court to charge $4,326.42 against the share of the estate to which the heirs of Mary Alice Lee were entitled. This motion was set down for hearing on August 16, 1968, and all parties were given notice of said date fixed for hearing the motion.

Having obtained permission of the court, movants David Lee, Harold Lee, and Gerald Lee, on November 7, 1968, filed their motion for rehearing. It contained Grounds 1 to 4, inclusive, in substance as follows:

(1) The court erred in its decree of August 31, 1968, in finding that the excess paid Billy Lee should be deducted from the pro rata shares of Harold Lee, Gerald Lee and David Lee, and that said beneficiaries be given a personal judgment against said Billy Lee. Movants contend that such excess should be deducted from the estate of J. J. Moxley as a whole, and said movants, Harold Lee, Gerald Lee and David Lee, should not be penalized separately from the other heirs of the estate because of the erroneous distribution to Billy Lee.

(2) The court erred in its decree of August 31, 1968, in granting motion of certain respondents that the amount of $4,326.42 received by respondent Billy Lee be charged against the share of the estate of movants.

(3) The court erred in its decree of May 31, 1968 (the final decree ordering distribution), in that the will of J. J. Moxley, deceased, was unambiguous and therefore no resort to parol or extrinsic evidence for the purpose of construing said will could be made; also that if any ambiguity existed in the terms of said will, it was a patent ambiguity, and likewise no parol or extrinsic evidence was admissible for the purpose of construing said will. Therefore, it was error for the court to admit the testimony by deposition of the attorney who drafted

the will as to the intentions of said testator in making said will.

(4) The court erred in its decree of May 31, 1968, in that the original complaint did not seek a construction of the will of J. J. Moxley, deceased. Nor did it seek to have the court declare the respective titles or interests of the parties in and to the land described or the proceeds to be derived from the sale of the timber, and no other pleadings subsequently filed adequately presented this matter for decision. Contention is made in closing the motion that the pleadings and suit are insufficient to warrant a judicial construction of the will of J. J. Moxley, deceased, and if the order or decree of this court entered on May 31, 1968, is allowed to stand, certain respondents will be deprived of their property without due process of law.

Following a hearing on the above motion on December 3, 1968, the trial court on December 14, 1968, ratified and confirmed its decree of May 31, 1968. This decree was not disturbed or modified.

The decree rendered August 31, 1968, was modified to the extent that the excess payment to Billy Lee was charged against his share of the estate to which he may be entitled in the future, "and that said respondent shall receive no income or corpus from said estate to which he otherwise would be entitled until such time as he had reimbursed the Estate of J. J. Moxley the amount of $2,706.38; * * *."

■ Referring again to our concurrence with the trial court that the will is ambiguous, we note:

In Subdivision (a) of the codicil, testator directed that said property be kept together and intact until the death of his last surviving child for the common benefit and enjoyment of his living children and the issue of the deceased ones, share and share alike.

It is not definite or certain whether the words "share and share alike" refer to living children and also to the issue of the deceased child taken as separate groups (per stirpes) or to the living children and the issue of the deceased ones, taken as a whole group (per capita).

Subdivision (b) provides that from the death of his wife until the death of the last surviving child, testator's business and farming operations were to be carried on for the common benefit and enjoyment of "the parties hereinabove named and designated in this item." The executors were mandated, after payment of certain charges, to "divide the balance each year among the parties hereinabove designated in this paragraph, share and share alike." Does this mean that the division was to be per stirpes or per capita? This subdivision should not be isolated and construed separate and apart from subdivision (a), *supra*.

We think that Item 1 of the codicil, a substitute for Item 4 of the original will (see *supra*), gave the executors broad powers in the management of the estate. The management, complete charge and supervision of said property and the business and farming operations for the common benefit and enjoyment of the parties were broad enough, in our opinion, to include authority to file the bill here involved to sell the deteriorating timber and the other timber ordered sold. The complaint in no wise sought a disposition of the land by partition or otherwise, but only a sale of the timber. Such sale was a good business move in the management of the estate. The Chancellor limited the sale to timber suitable for saw logs or pulpwood, measuring six inches in diameter, situated on the lands described in the complaint.

■ The bill prayed that after the payment of certain expenses, the balance derived from the sale of the lands be disbursed to the devisees under the will in accordance with the provisions thereof. The

complaint concluded with a prayer for such other, further or different relief as under the premises complainant may be entitled.

While the complaint is not in the form usually used for construction of a will or for declaratory relief, we think that it was sufficient to invoke the powers and jurisdiction of the court to construe the will in an effort to ascertain the intention of testator with respect to the distribution of the balance of the money derived from the sale of the timber. None of the respondents before decree challenged the sufficiency of the bill to invoke such construction. It is to be noted that no effort was made to construe the will relating to any other provision and none relating to disposition of the land by the terms of the will. Such matter was reserved for future consideration. Assignment of Error 25 is without merit.

■■ There was no reversible error on the part of the trial court in considering the testimony of the attorney who drew the will since, as shown above, no objection was interposed to such testimony and the cause was not tried under the provisions of Act 101, *supra*. This testimony tends to clarify the ambiguity in the will and lends support to the decree of May 31, 1968, which adjudicates distribution of the remaining balance from the sale of the timber after payment of costs and creation of a reserve fund.

We find that none of the argued assignments of error has merit. The final decrees from which this appeal is taken should be and each is affirmed.

The foregoing opinion was prepared by Bowen W. Simmons, Supernumerary Circuit Judge, and adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and MERRILL, HARWOOD and McCALL, JJ., concur.

LAWSON, J., concurs in the result.