This appeal raises the issue of whether the trial judge erred in allowing extrinsic evidence to prove the intent of the testator.
The pertinent portion of the subject will is:
 "I hereby give, devise and bequeath all of my personal property, located in my home, or on my property, unto Kathleen Brittain Owen, subject to the specific devises set out herein below . . ." (Emphasis added.)
The will contained no residuary clause.
The dispute centers around this question: Do the words ". . .all of my personal property, located in my home, or on myproperty . . ." include some $25,000 in cash and certificates of deposit which were located in the Central Bank, N.A., Fort Payne Branch? Heirs of the testator contend that the will clause is clear, and that, as a matter of law, the bequest of"all of my personal property, located in my home, or on myproperty " did not include the property at the bank.
One of the witnesses testified that when the testator died, he went to the testator's home shortly after his death and found a checkbook, a passbook savings book, and a key to a safety deposit box, and when the safety deposit box was opened, the certificates of deposit were found.
The evidence showed that the probated will was executed by the testator on August 8, 1975. Previously, on April 3, 1975, the testator had executed a will almost identical to the August 8 will. It provided, in part:
 "I hereby give, devise, and bequeath all of my personal property, located in my home, or on my property, unto KATHLEEN BRITTAIN OWEN. If KATHLEEN BRITTAIN OWEN predeceases me, then it is my will that her portion of my estate pass to her children in equal parts.
 "Aside from the One Thousand Dollars I have left to MYRA JO KOUGHLIN, it is my last will and testament that all of my money be divided in equal parts and distributed to KATHLEEN BRITTAIN OWEN and ROY CLYDE BRITTAIN, JR. If either of them predecease me, then their share is deemed to have vested and shall pass in total and in equal parts to their surviving children."
In the will of August 8, 1975, which was his last will and testament, and was duly probated, the Testator stated the following:
 "I hereby give, devise, and bequeath all of my personal property, located in my home, or on my property, unto Kathleen Brittain Owen, subject to the specific devises set out herein below. If Kathleen Brittain Owen predeceases me, then it is my will that her portion of my estate pass to her children in equal parts."
During the trial, the attorney who drew the August 8 will was permitted to testify, over objection, that he first interviewed the testator in July of 1975, and that the testator told him that he wanted his money to go to Kathleen Brittain Owen. The appellants claim that the admission of this testimony was erroneous and highly prejudicial.
The trial judge, in his decree, concluded:
 "In construing a will, the court's central concern always is determining the intention of the testator. As an aid in making this determination, the law presumes that one who makes a will intends to dispose of his entire estate. However, the law also presumes that one would not intentionally disinherit his heirs. When these two presumptions clash, as they do in this case, the presumption favoring the disposition of the entire estate prevails. Roberts v. Cleveland, 222 Ala. 256, 132 So. 314 (1931).
 "The language of the clause quoted above, on its face, is plain and intelligible. It is the existence of extraneous facts which makes it ambiguous. The law classifies such an ambiguity as latent, and the presence of a latent ambiguity authorizes the court to use parol evidence for the purpose of ascertaining the testator's intention. Consequently, the testator's instructions to the draftsman of the will become particularly relevant. *Page 308 
 "The attorney who drafted the will testified that the testator's instructions were that his money was to go to Kathleen Brittian (sic) Owen, and that the will was to be drawn in a manner that would prevent his heirs from receiving any part of his estate.
 "When this testimony is considered together with the presumption against intestacy, the conclusion is inescapable that the testator intended for Kathleen Brittian Owen (sic) to have the savings account and the certificates of deposit. The fact that these items were not located inside the testator's house is not inconsistent with this conclusion. The keys to the bank box and the passbook found in the testator's house are indicia of ownership and, therefore it is not unreasonable that the testator considered possession of the passbook and the keys tantamount to possession of the money."
We affirm the order of the trial court.
The law says that where a latent ambiguity exists in a will, the court may resort to extrinsic evidence in ascertaining the intent of the testator. Perdue v. Roberts, 294 Ala. 194,314 So.2d 280 (1975).
A latent ambiguity may arise in the identification of or application to the property or subject matter as described or bequeathed. See Wiley v. Murphree, 228 Ala. 64, 151 So. 869
(1933). See also, Achelis v. Musgrove, 212 Ala. 47, 101 So. 670
(1924).
A latent ambiguity is to be distinguished from a patent ambiguity. A patent ambiguity is not a true ambiguity; it is merely confusion created on the face of the will by the use of defective, obscure or insensible language. On the other hand, a latent ambiguity occurs where the language is clear and intelligible, but when considered in light of certain extraneous facts, it takes on a multiple meaning. As we said inAchelis v. Musgrove, supra:
 "The distinction is that, while such . . . [extrinsic facts] . . . are admissible to explain the meaning of ambiguous terms, it is never admissible to show terms the testator intended to use."
Standing alone, the words "all of my personal property" would include money on hand and on deposit, whether in a bank or savings and loan association account. It would also include choses in action. Sims v. Moore, 288 Ala. 630, 264 So.2d 484
(1972); Bromberg v. McArdle, 172 Ala. 270, 55 So. 805 (1911). The appellants would have this court limit the bequest to the tangible personal property found at the testator's home, because, they say the personal property given is limited to that "located in my home, or on my property. . . ."
We do not read the phrase, "located in my home, or on my property" as clearly indicating that the testator intended this to be a limitation on the bequest of "all my personal property." Sims v. Moore, supra. In any event, we cannot find within the four corners of the will any language indicating that the testator intended to make a distinction between tangible and intangible personal property and it is undisputed that the passbook and the key to the safety deposit box were on the testator's property.
Our decision takes into consideration the presumption against partial intestacy. Achelis v. Musgrove, supra, and the testimony of the scrivener concerning the testator's intent at the time the will was made. See Lee v. Moxley, 286 Ala. 134,237 So.2d 656 (1970).
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur. *Page 309