(132 So. 314)

ROBERTS v. CLEVELAND et al.

I Div. 607.

Supreme Court of Alabama.

Jan. 22, 1931.

258

Harry T. Smith & Caffey, of Mobile, for appellant.

Stevens, McCorvey, McLeod, Goode & Turner, of Mobile, for appellees.

FOSTER, J.

The main purpose of the bill is to vacate an agreement entered into between the heirs of testatrix and her executor, whose intent it is contended, on the one hand, was to

change the effect of her will, and, on the other hand, that it was only to make certain some ambiguities in it, so that parties dealing with the executor as trustee would be assured of protection, and the heirs and legatees would understand more fully the nature of its provisions and their interest under it.

The validity of this contract is attacked by complainant, the chief legatee, on the ground that its execution by her was procured by undue influence and fraud on the part of the executor. The ground upon which this charge is predicated is that, though by the terms of the will, when interpreted in the light of the settled rules of construction, complainant took a fee in the property of testatrix, and though the executor had been so advised by competent counsel, he caused the contract to be prepared by which her interest was fixed at a life estate with remainder to the heirs of testatrix; and caused her to execute it without disclosing to her the nature of the title vested in her by the will and the nature of the legal advice he had received to that effect, and that such concealment of the legal advice, and the failure to disclose to her the true nature of her interest under the will, amounted to fraud and undue influence exerted upon her by the executor who was in confidential relations with her. The heirs of the estate are not charged with participation in such concealment or knowledge of the legal advice nor the preparation or execution of the contract by complainant.

■ The true interpretation of the will has controlling influence upon the issue. For, if the executor on whom complainant relied in confidence took advantage of the assumption which all seem to have indulged that complainant took only a life estate, whereas the will vested in her a fee, and he was so advised, and she was not, and thereby procured her signature to a contract which curtailed her rights, in reliance upon him, and he by the contract secured an advantage, she would be due to have the contract vacated. For, when confidential relations exist, the dominant party cannot secure the benefit of a contract with the one reposing such confidence in him unless the contract was just, fair, and reasonable or the relation of trust and confidence was broken as to that transaction by reliance upon competent independent advice. Verner v. Mosely, 221 Ala. 36, 127 So. 527; Scott v. Hardyman, 218 Ala. 515, 119 So. 224; Kidd v. Williams, 132 Ala. 140, 31 So. 458, 56 L. R. A. 879; McQueen v. Wilson, 131 Ala. 607, 31 So. 94; Jones v. Brooks, 184 Ala. 115, 63 So. 978.

If the contract is thus procured by undue influence which affects it in its entirety, it will fall, though some of the beneficiaries had no part in procuring it. Coghill v. Kennedy, 119 Ala. 641, 24 So. 459; Florey v. Florey, 24 Ala. 241.

If the right of complainant under the will is only for her life, the contract did not materially cut down her interest, but had the effect to relieve all doubt which might exist respecting the nature of her interest, and would work no fraud upon her. The construction of the will therefore goes directly to the issue as to the validity of the contract.

■ We will undertake to construe the will in so far as to determine the nature of the devise to or for complainant. It is agreed by all that the purpose of courts in construing wills is to ascertain their meaning and the intent of the testator as therein expressed, considered in the light of attending facts and circumstances. When and only when such meaning and intent cannot be thus ascertained by the words of the will and attendant facts does the law undertake to assert certain rules for the determination of its true meaning as the result of human experience and a knowledge of human nature. Such rules are never thought to be arbitrary, but are stated by the courts as the effect of the natural bent of the normal mind.

■■ The law will therefore presume that, when a testator undertakes to make a will of all his property, he did not intend to die intestate as to any of it or during any period of time. As a corollary of this presumption it has been long settled that a devise of the rents and profits of property real or personal, without limit as to time and without a gift over, carries a fee to the devisee, unless a contrary intention appears. Stein v. Gordon, 92 Ala. 582, 9 So. 741; Guesnard v. Guesnard, 173 Ala. 250, 55 So. 524; Scruggs v. Yancey, 188 Ala. 682, 66 So. 23; Jordan v. Walker, 201 Ala. 248, 77 So. 838. The number of authorities in other jurisdictions could be extended to very large but unnecessary proportions.

The statement of this result is often accompanied in the authorities with the qualification last above mentioned, that it is true only when no contrary intention appears from the will itself. This of course means in the light of the attendant facts and circumstances. It is after all a question of intention; for all estates by implication are founded on the presumed intent of the testator. Wolffe v. Loeb, 98 Ala. 426, 13 So. 744; Myrick v. Williamson, 190 Ala. 485, 67 So. 273.

■ That implication which will defeat the heirs at law of the testator is disfavored. Caldwell v. Caldwell, 204 Ala. 161, 85 So. 493. It is said that this can be accomplished only by necessary implication in the absence

of express words. Wilder v. Loehr, 211 Ala. 651, 101 So. 591.

■■ In order to accomplish the result that a devise of the income with no limit as to time nor gift over shall vest a fee in the devisee, the presumption against intestacy becomes the dominant and controlling influence, and takes effect in superiority over that by which the testator is presumed not to intend to disinherit his heirs. The two presumptions lead to opposite results, and both cannot have controlling effect when there is nothing in the will to show an intention in this respect other than the bare devise of the income without limit or gift over. The question then is whether there is anything in the will which shows an intent to limit the devise of the income for the life of the devisee. For, if such intention is thus shown, the presumption loses its force. One of its essential qualities is thereby wanting.

If we assume that the mere circumstance of the creation of a trust is not sufficient to show an intent to limit the nature of the devise to the life of the devisee, its tendency is to add emphasis to other expressions which may indicate such purpose. The creation of a trust is certainly an appropriate method of securing to the devisee a life benefit, if such is otherwise fairly expressed or implied. The words which may be considered as material upon the existence of such implication are properly construed in the light of the fact that the devisee is given no control or management of the property.

But the will provides that the income shall be paid her "monthly," and that the income "only" shall be paid her unless her "necessities of life" shall need "supplemental payments out of the capital itself," and that the executors shall be the "sole judges of whether or not she lacks such necessities of life." It seems to be a fair inference that the testatrix devised the income for the purpose of furnishing maintenance to her sister. It indicates that she shall not have the benefit of the capital except for that purpose.

The fact that $300 of the capital was to be used for another, when the property is sold, shows that at least some of the capital was not intended for her in fee. When we consider such features of the will they indicate to us a purpose not to vest in complainant more than such amount, income and capital, as will supply her with what executors shall consider sufficient to provide her the necessities of life, not less than the net income, after deducting the amount of capital consisting of $300 set apart for Sidney G. Roberts, and the income from one-sixteenth of the proceeds of the sale of an 80-acre tract for the benefit of Jodie Roberts. The necessities of life cannot continue after her death. Such provisions, in connection with a trust which gave a proper setting, all indicate to us an unmistakable conclusion that the testatrix intended to limit its duration to the life of the devisee. In fact, it is not easy to think of a stronger implication of such purpose. When it exists, one of the qualities of the presumption of a fee as the result of the devise of the income is wanting.

We cite cases in which the facts were more or less similar to those we are considering. The reasoning in them supports our conclusion. Watkins v. Watkins (Ky.) 120 S. W. 341; Cavan v. Woodbury, 240 Mass. 125, 133 N. E. 95; Wynn v. Bartlett, 167 Mass. 292, 45 N. E. 752; Keating v. Smith, 5 Cush. (Mass.) 232; Schuldt v. Reading Trust Co., 292 Pa. 327, 141 A. 152; Ladies Ben. Soc. v. Orrell, 195 N. C. 405, 142 S. E. 493.

The demurrers which go to the insufficiency of the bill in showing fraud and undue influence by reason of the facts we have alleged we think were properly sustained for the reasons we have indicated.

■ We do not think that the decree was erroneous on account of the general averment of undue influence. It is not necessary to allege the quo modo by which the undue influence was exerted. It is sufficient to aver in general terms that the execution of the contract was the result of the undue influence of named persons. Cox v. Parker, 212 Ala. 35, 101 So. 657. But, when the bill undertakes to set out a specification of the facts constituting the quo modo, they must be sufficient to that end.

In this case we construe the allegations thus made to rest upon the facts alleged, which we think do not constitute undue influence, for that, in so far as the estate of complainant is fixed by the contract, she is by it made to receive in effect the nature of interest created by what, we think, is the true meaning of the will, and that she is not otherwise adversely affected by the contract.

The effect of this conclusion is to give our interpretation of the will in such material respect as may be sufficient to meet the requirements of a due administration of the estate as further affected by the agreement referred to. As long as such agreement is in effect there may be little or no occasion for a further construction of the will.

The decree gave effect to our views, and it is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.