174 So. 303

PARRISH et al. v. GAMBLE et al.

2 Div. 86.

Supreme Court of Alabama.

April 29, 1937.

Rehearing Denied May 27, 1937.

Pitts & Pitts, of Selma, for appellees.

Keeton Arnett, of Selma, for appellants.

222

BOULDIN, Justice.

This bill was filed to construe the following will:

"Feb. 10, 1934.

"My last Will and Testament:

"To my beloved Nephew Joseph Parrish, I give full authority to divide my small estate, as requested in a separate paper, not to be probated. He will give no bond, and be guided only by his unfailing good judgment, and unquestioned integrity.

"Grace B. Evans

"Dollie Twilly
"Carrie Sanders"

Complainant was the administrator of the estate of the decedent cum testamento annexo. The respondents were the heirs and next of kin of decedent, namely: Hattie B. Parrish, a sister; Joseph P. Parrish, Belzora P. Elebash, and Mary P. McCown, children of a deceased sister; and Belzora B. Kemp, child of a deceased brother of decedent.

The bill avers the will is of doubtful construction or of a disputable solution as to which rational minds may differ, in respect to the following:

"6. That it is doubtful under the terms of said Last Will and Testament whether the said respondent, Joseph P. Parrish named therein, has the power to divide and dispose of the estate of said decedent either according to his good judgment or according to the request of the testatrix contained in a separate paper which has not been probated as a part of the aforesaid Will.

"7. That in the event the respondent, Joseph P. Parrish, named in said Last Will and Testament has the power to divide and dispose of the estate of said decedent, then it is doubtful whether under the terms of said Will the said Joseph P. Parrish has the power to divide and dispose of said estate solely according to his good judgment, or whether the said respondent's power is limited or qualified by any request of the testatrix contained in a separate paper and not probated as a part of the aforesaid Will.

"8. That it is doubtful and in dispute whether or not any other separate or different paper or papers not filed for probate with the aforesaid Last Will and Testament can or may be construed with and as a part of the said Will of the decedent, Grace B. Evans; and whether or not any other separate or different paper or papers can under the terms of the aforesaid Last Will and Testament be proved and probated as a part thereof.

"9. That it is doubtful and in dispute whether or not the decedent, Grace B. Evans, died intestate so far as the disposition of her property, real and personal, is concerned; and whether or not said property, real and personal, should be divided among the heirs at law of said decedent according to the statutes of descents and distributions, as provided by the laws of the State of Alabama."

Respondents, other than Belzora B. Kemp, joined in an answer to these several paragraphs, saying:

"V. That they deny the averments of paragraph five of said Bill of Complaint and aver that the language and words of the Last Will and Testament of Grace B. Evans, deceased, are clear and unmistakable in meaning and that said Last Will and Testament conveyed to Joseph P. Parrish, one of the Respondents herein, the general and absolute power to dispose of the real and personal estate of the said Grace B. Evans, deceased. Respondents further aver that attached to the Last Will and Testament of Grace B. Evans, deceased, was a separate paper in the handwriting of the said Grace B. Evans, a copy of which separate paper is attached hereto marked Exhibit 'A' and made a part hereof the same as if fully copied herein, and that said separate paper shows on its face that the intention of the testatrix was to convey a general and absolute power to the said Joseph P. Parrish to divide the estate, both real and personal, of said testatrix.

"VI. Respondents deny the averments of paragraph six of said Bill of Complaint and aver that the language and words of the said Last Will and Testament of Grace B. Evans, deceased, are clear and unmistakable in meaning and that the phrase included in said Last Will and Testament as follows: "as requested in a separate paper, not to be probated", are mere words of entreaty coupled with discretionary words and, as a matter of law, are not mandatory or binding upon the donee of the power, the said Joseph P. Parrish.

"VII. Respondents deny the averments of paragraph seven of said Bill of Complaint and in further answer thereto adopt the averments made by Respondents herein in paragraphs five and six herein.

"VIII. That they admit the averments of paragraph eight of said Bill of Complaint and aver that attached to the said Last Will and Testament of the said Grace B. Evans, deceased, were three papers other than that separate paper mentioned herein, a copy of which is hereto marked Exhibit 'A' and that copies of said other papers are attached hereto marked Exhibits 'B' 'C' and 'D' and made a part hereof the same as if fully copied herein. Respondents further aver that said separate papers show in clear and unmistakable words and language that it was the intention of said testatrix to convey to the said Joseph P. Parrish, Respondent herein, a general and absolute power, and that, as a matter of law, said separate papers may be looked to and considered to arrive at and determine the intention of said testatrix.

"IX. That as to paragraph nine of said Bill of Complaint, they admit that the questions as to whether or not the said decedent, Grace B. Evans, died intestate so far as the disposition of her property, real and personal is concerned, and whether or not said property, real and personal, should be divided among the heirs at law of said decedent according to the statutes of descents and distributions as provided by the law of the State of Alabama, are in dispute, but aver that the words and language of said Last Will and Testament are clear and unmistakable in their meaning and that it was the intention of the testatrix to convey to the said Joseph P. Parrish a general and absolute power to divide the estate, both real and personal, of the said Grace B. Evans."

Exhibits A and C, referred to in paragraphs V and VIII of the answer, are as follows:

### Exhibit A.

"December 21, 1932.

"My Last Will and Testament—

"To my beloved nephew Joseph P. Parrish, I give and bequeath all my property, both real and personal. He will give to my legatees, as indicated in a separate paper, only as his good judgment, and unquestioned integrity, dictates.

"He will make no bond, and be answerable to no one. This Will, revokes any and all others, and will alone be probated.

"Conditions change so rapidly, that the seeming wisdom of today, may be tomorrow's folly; therefore, I give to him full and unquestioned authority.

"Grace B. Evans

"My written requests, I do not wish probated, as they concern only my immediate family, with the approval of Joseph P. Parrish.

"Grace B. Evans."

### Exhibit C.

"May 6, 1935.

"My Last Will and Testament—

"My beloved nephew, Joseph P. Parrish, I appoint my Executor, to serve without

bond, with full authority to act in all matters, as his unquestioned integrity, and always good judgment, directs.

"Should I die before my sister, Hattie Baker Parrish, under our father's will, she will then inherit my entire share in the George O. Baker estate. Her son, Bert Parrish being an only child, will therefore receive, at her death, both his mother's share and mine. For this reason only, I have not included him in my small personal estate. The same is true of my niece, Belzora Baker; Both are so generously provided for.

"To my sister, Hattie B. Parrish, I give anything of mine in the old Geo. O. Baker home that she may wish. Other things, not already hers I would wish taken to my country home, Nirvana, at Elm Bluff, and kept there, so long as the place remains in the family.

"To my sister, Mrs. Eliza Evans Jones, I leave the sum of two thousand dollars, being part of the sum, personally spent by her brother, Joseph B. Evans, on our home, at Elm Bluff, and which he did not live to enjoy.

"The coming years promise much of increasing unrest and confusion. The need of a quiet retreat will become more and more felt. After all debts are paid, I wish that the income from my personal estate, should be used to maintain and keep Nirvana.

"The timber, I do not wish cut, unless absolutely necessary to maintain the fund necessary for repairs, taxes and caretaker.

"The servants and tenants, living there at my death, who have served me so long and faithfully, I wish to remain, without rent, so long as it is financially expedient, and they so conduct themselves as to merit this consideration.

"Should my death come by accident, I have a small policy with a Chicago Insurance Co. among my papers.

"My jewelry in part goes to Margaret Elebash, and I request that it be not sold, or changed, unless she is in need. The bug pin I give to Joseph Parrish, with the request that at his death, it go to Margaret Elebash.

"Grace B. Evans

### Exhibit D.

"I would also wish added to the Nirvana fund. The California property is now of no value, but I advise its being kept, indefinitely, as it may some day, be worth a great deal.

"After the death of all my nieces and nephews and LaRue McCown I would like for Nirvana to pass to Albert G. Parrish Elebash, and Margaret Elebash.

"Grace B. Evans

"Carrie Sanders
"Sallie Sanders"

Exhibit B also headed "My Last Will and Testament," and dated April 24, 1934, is quite similar to Exhibit C of later date. Exhibit D purports to be a continuance of or addition to another paper. It is witnessed. With what document it is connected, does not appear. The cause was submitted on bill, answer, and exhibits, and demurrers to the bill, interposed by respondent Belzora B. Kemp.

The trial court held the instrument admitted to probate is a valid will in that it names an executor, a personal representative chosen by the testatrix, to wind up her estate, although it makes no devises or bequests disposing of the estate, and was therefore properly admitted to probate, and, on failure of the person nominated as executor to qualify, letters of administration with the will annexed were properly issued, clothing complainant with the powers and duties of an administrator as in cases of intestacy.

That a valid will may merely nominate an executor, without making disposition of the estate, is not questioned, and is supported by authorities here and elsewhere. Blacksher Co. et al. v. Northrup, 176 Ala. 190, 57 So. 743, 42 L.R.A.(N.S.) 454; Conoway v. Fulmer et al., 172 Ala. 283, 54 So. 624, 34 L.R.A.(N.S.) 963; 68 C.J. p. 611, § 232; p. 884, § 602 (C).

The main insistence of appellants, the respondents joining in the foregoing answer, is that the will admitted to probate clothes Joseph Parrish with an absolute power of disposition; a power to appoint the beneficiaries of the estate, or else a power to appoint the beneficiaries among the next of kin. 49 C.J. 1250, § 6; p. 1261, § 37.

On this theory it is argued that when the administrator winds up the estate, pays the debts, etc., the estate should be turned over to the donee of the power.

Stress is laid on the fact that by express provision in the will, the request by a separate paper was not to be probated, therefore, not a part of the will.

That the donee of such power be "guided only by his unfailing good judgment

and unquestioned integrity" is relied upon to define the extent of the power.

Dealing first with that part of the answer setting up Exhibits A, B, C, and D, in aid of such construction, and assuming without deciding that such documents could be looked to as declarations of the testator's purpose, in aid of the construction of a will of doubtful import, we observe they do not support appellants' theory.

Exhibit A, alleged to have been written by testatrix, bears date some fifteen months before the will admitted to probate. It purports to be a will, but never executed, nor witnessed as the law requires. It purports "to give and bequeath all my property, both real and personal" to Joseph P. Parrish. It makes a like reference to a separate paper disclosing her request or wish as to what he would give to her legatees. But no legatees were named.

Now the subsequent will, duly witnessed and admitted to probate, employs words of quite different import. "I give full authority to divide" is substituted for "I give and bequeath all my property." The one vested title, the other carries no such import, but a power to divide. It is apparent the power to divide, one strictly administrative, at least as to personalty, was intended to be exercised by Joseph Parrish as executor. Relieving him of bond so implies. The confidence expressed in his integrity and good judgment is referable to the authority to "divide," not to dispose of the property by naming the beneficiaries and the shares of each.

Again looking to Exhibit C, 'the last expression of the testator's mind, according to the theory of the answer, we note this also purports to be a will, made more than a year after the will admitted to probate. It expressly confers the powers therein defined on Joseph P. Parrish, as executor. While admittedly the discretion and continuing duties of the class indicated in that paper may be regarded as a personal trust, to be executed alone by the person named, nothing in the instrument indicates a purpose to grant such powers, save on his qualification as executor. This document makes specific bequests.

But we need not further pursue a discussion of these instruments which admittedly are not parts of the will, not incorporated in the will by any identifying reference therein, and indeed not purporting on their faces to be connected with the will admitted to probate.

"Precatory words," words expressive of a wish or request merely, often dealt with in wills, sometimes directed to an executor, sometimes to a beneficiary, touching his bequest, are expressions in the body of the will. Broadly, it may be said, such expressions directed to an executor are more often deemed mandatory than when directed to a devisee, to whom a definite estate has been willed. 69 C.J. pp. 716 to 721.

Nothing we have written is to be understood to indicate that writings not a part of the will may be looked to either as advisory or mandatory in the construction of wills. All the safeguards thrown about the execution of wills would fail of their purpose, if by indirection they may be thus added to or modified.

We concur in the view of the trial court that this will, on its face, or with the aid of the documents mentioned, cannot be construed to vest an absolute power of disposition in Joseph Parrish, either to be performed as executor, or under a power apart from the office of executor; nor a power of appointment, carrying authority to name the beneficiaries among the heirs as a class, or to prescribe what share each shall take.

Such powers, virtually substituting the donee of the power for the testator, in naming the objects of his bounty,. or the shares each shall take, is not to be inferred except from clear and unequivocal language, or evidence admissible to make such intent clear. Pearce v. Pearce et al., 199 Ala. 491-506, 74 So. 952.

The will makes no disposition of the estate; it descended as in case of intestacy. The will confided to Joseph Parrish, upon qualifying as executor, the responsibility of making a fair division among the heirs and distributees, after payment of debts, etc. Failing to qualify, as executor, the estate should be now administered as in case of intestacy.

Such was the view of the trial court.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.