238 So.2d 861

**Richard L. BLACK**

v.

**Gladstone S. BLACK et al.**

**4 Div. 388.**

Supreme Court of Alabama.

Aug. 13, 1970.

R. A. Norred, Birmingham, for appellee Mildred H. Black.

Ramsey & Johnson, Dothan, for appellant.

LAWSON, Justice.

This is an appeal from a final decree of the Circuit Court of Geneva County, in Equity.

Myrus L. Black died on June 18, 1956, survived by his wife, Mary Eugenia Sellers Black, and six children.

On July 6, 1956, a written instrument, which will be set out hereafter, was admitted to probate in the Probate Court of Geneva County as the last will and testament of Myrus L. Black. On the same day letters testamentary were granted to Dr. M. Eldridge Black, Jessie Black Hagan and Gladstone Sellers Black, as executors of the last will and testament of Myrus L. Black.

The pertinent provisions of the instrument admitted to probate as the last will and testament of Myrus L. Black read as follows:

"STATE OF ALABAMA
COUNTY OF GENEVA

"I, Myrus L. Black, a resident citizen of the State and County aforesaid, and over the age of twenty-one years, being of sound mind and disposing memory, do hereby make and publish this my last Will and Testament, revoking all former wills which may have been made heretofore by me.

"ITEM ONE

"I direct that all my just debts and funeral expenses shall be paid by my Executors as soon after my death as practical.

"ITEM TWO

"I own several tracts of land and have several pecan groves growing thereon, in addition to other property. It is my desire that all my property be held intact for a number of years after my death as will be more fully set forth hereinbelow, and I direct that my three joint Executors shall make adequate provision for the support and maintenance of my wife, Mary Eugenia Sellers Black, out of the profits of my said estate each year so long as she may live. I further direct that after all expenses have been paid for the caring for and operation of my said estate, including adequate support for my said wife, that the remaining net income therefrom, at the end of each year, shall be divided equally between my six children, viz: Dr. M. Eldridge Black, Mrs. Stella Black Nation, Gladstone Sellers Black, Mrs. Annie Black Ward, Mrs. Jessie Black Hagan, and Mrs. Mary Black Johnson, or to the heirs of any of those who may not be living.

"ITEM THREE

"At any time that a majority of the three Executors hereinafter named, or their successors, shall deem it advisable and to the best interest of all concerned, they are hereby authorized to dispose of my said estate in whatever manner they deem best, either at private or public sale, and to give whatever notice they may see fit, and to make conveyances to the purchasers, and to divide the proceeds of said sale or sales equally between my immediate heirs or their decendents [sic], but the disposal of my said estate and the division of the proceeds derived therefrom shall not be postponed to a date later than twenty-one years after the death of all my immediate heirs.

"ITEM FOUR

"I hereby nominate and appoint Gladstone Sellers Black, Dr. M. Eldridge Black and Mrs. Jessie Black Hagan as Executors of this my last Will and Testament, and hereby exempt them from the responsibility of making a bond for the faithful perform-

ance of their duties arising hereunder, and I direct them to take full charge of all my property of every kind, character and description, and I direct that said Executors, by a majority vote, shall formulate a policy or program for the management of the affairs of said estate, and that the said Gladstone Sellers Black shall be the one who will carry out said policy or program, and further that the said Gladstone Sellers Black may act by himself in his capacity as Executor in any emergency that might arise.

### "ITEM FIVE

"I direct that my said Executors shall pay to the said Gladstone Sellers Black, who is to be in the active management and control of my estate, a reasonable salary each year for his personal services, said amount to be agreed upon by the entire group of Executors, but in case of the death of the said Gladstone Sellers Black, then the remaining Executors shall have the right and it shall be their responsibility to select a manager to personally look after said estate. I further direct that at the end of each calendar year my said Executors shall be furnished with an itemized report of the income and expenses of said estate for the year just closing. It shall be the duty of said Executors to make provisions for the normal expenses of the operation of said estate, managers salary, the upkeep of the estate, including taxes, and the care of my said wife, Mary Eugenia Sellers Black.

### "ITEM SIX

"In case a vacancy occurs among my said Executors by the death of either one of them, it is my will and I hereby direct that the remaining Executors shall fill said vacancy by selecting some person to fill said vacancy out of my surviving immediate heirs or their decendents [sic], and I further direct that my said Executors shall not be required to file any inventory of my said estate with any Court or to make any report of their conduct of my said estate with any Court.

"Witness my hand this the 24th day of June, 1947.

/s/ Myrus L. Black"

Mrs. Mary Eugenia Sellers Black, the widow of Myrus L. Black, to whom we will hereinafter sometimes refer as testator, died on November 22, 1962.

Dr. M. Eldridge Black, one of testator's sons and one of the beneficiaries named in his will, died testate on February 16, 1966, survived by his widow, Mildred H. Black, and by his son, Richard L. Black. We are not advised as to whether Mildred H. Black is the mother of Richard L. Black. Dr. Black apparently was a resident of Pinellas County, Florida, at the time of his death. In his will, which was "Filed For Record" in Pinellas County, Florida, on March 11, 1966, Dr. Black devised and bequeathed all of his estate, real, personal and mixed, to his wife, Mildred H. Black, and she was appointed the sole executrix of his last will and testament.

On October 4, 1967, Gladstone Sellers Black and Jessie Black Hagan, as Executors of the last will and testament of Myrus L. Black, filed their bill in the Circuit Court of Geneva County, in Equity, against Richard L. Black, Mildred H. Black, Stella Black Nation, Mary Black Johnson and Annie Black Ward.

As pertinent here the bill, aside from a general prayer, prayed:

"1. That this Court will advise and instruct complainants as to the proper party to pay the interest to which Dr. M. Eldridge Black would be entitled of the estate of Myrus L. Black, during the pending of the trust provided therein and also at the termination thereof."

The respondents Richard L. Black and Mildred H. Black filed separate answers. The other respondents made no appearance.

The answer of Richard L. Black, filed on November 4, 1967, although not made a cross bill, in its concluding paragraph prays:

" * * * that the following construction be placed upon the Will of Myrus L. Black; (1) that the Will of Myrus L. Black be declared to have created a resulting trust, the title to said trust having vested in the Executors as Trustees, and not having vesting in the Executors as individuals. (2) That this Honorable Court will declare the Respondent Richard L. Black, to be the proper party and interest to that portion of the estate of Myrus L. Black to which M. Eldridge Black would be entitled had the said M. Eldridge Black survived, and that the said Richard L. Black be declared the proper party recipient of the proceeds of any subsequent sale of the estate of Myrus L. Black to which M. Eldridge Black would have been entitled had the said M. Eldridge Black survived. * * "

Mildred H. Black filed her answer on December 5, 1967, wherein she admitted the averments of each paragraph of the bill except Paragraph VII, which paragraph reads:

"Complainants aver that they are uncertain as to the party to pay the share of the net income, provided under Item Two of the Last Will and Testament of Myrus L. Black. Under the terms of the Last Will and Testament of Myrus L. Black, did Dr. M. Eldridge Black have the power of appointment of the interest of said estate which he was the beneficiary thereof? Does Mildred H. Black, as the sole beneficiary under the Last Will and Testament of Dr. M. Eldridge Black take his interest thereunder, or should your complainants pay said interest direct to Richard L. Black, as the only legal heir of Dr. M. Eldridge Black?"

As to Paragraph VII of the bill, Mildred H. Black averred in her answer as follows:

"For answer to Paragraph Seven of said Bill of Complaint, this respondent avers that at the time of the death of M. Eldridge Black, the interests of the said decedent had already vested in the estate of Myrus L. Black, and that the testamentary disposition made by the said Dr. M. Eldridge Black controls and determines the ownership of that portion of the estate of Myrus L. Black which had vested in Dr. M. Eldridge Black, and that the respondent, Mildred H. Black, is now the owner of all of the interests of the said Dr. M. Eldridge Black in the estate of the said Myrus L. Black."

The cause was submitted for final decree on the pleadings, on a deposition of the complainant Gladstone Sellers Black, which the parties agreed should be "treated as evidence * * * and be given the same weight and effect, subject to the provisions of Title 7, Section 372(1), Code of Alabama, as Recompiled, as had the witness testified in open Court," and on the following stipulation:

"That M. Eldridge Black died on February 17, 1966, and was survived by his widow, the respondent, Mildred H. Black, and by his son, the respondent, Richard L. Black, and that the said respondent, Mildred H. Black is the sole beneficiary under the will of the said M. Eldridge Black, which will was duly probated in the State of Florida."

The trial court rendered a final decree on March 18, 1969, which the court modified by a decree rendered on March 28, 1969.

From the decree, as modified, the respondent Richard L. Black has appealed to this court.

■ The decree of March 18, 1969, was in the breast of the trial court for a period of thirty days thereafter and, hence, that court had the right to modify it ex mero motu on March 28, 1969.—§ 119, Title 13, Code 1940; North Birmingham Trust & Savings Co. v. Hearn, 211 Ala. 18, 99 So. 175.

The provisions of the decree, as modified, with which we are concerned on this appeal read:

"Ordered, Adjudged and Decreed by the Court that upon the death of Mrs. Myrus L. Black, that the one-sixth interest of Dr. M. Eldridge Black in and to the corpus of the trust estate established under the Last Will and Testament of Myrus L. Black, became vested in Dr. M. Eldridge Black and was subject to the power of appointment under his Last Will and Testament and upon the probate of the Last Will and Testament of Dr. M. Eldridge Black, the beneficiary thereunder, Mildred H. Black, his widow, became vested of the one-sixth interest in the corpus of said trust estate that was vested in Dr. M. Eldridge Black at the time of his death, and as such, Mildred H. Black is entitled to such proportionate interest in any proceeds or income from said trust estate from the date of the death of Dr. M. Eldridge Black. The trustees of said trust estate, however, still maintain the authority of sale of the corpus of the trust estate as provided under the terms of the Last Will and Testament of Myrus L. Black."

Construction of a will is always started with the proposition that the province of the court is to ascertain the intent of the testator from the language of the will, in connection with attending facts and circumstances which may shed light upon any apparent uncertainty arising from its terms or existing by reason of such facts and circumstances.—Patterson v. First Nat- Bank of Mobile, 261 Ala. 601, 75 So.2d 471.

We have said that only where testator's intent cannot be ascertained by the words of the will and attendant circumstances does the law undertake to ascertain certain rules for the determination of the will's true meaning, as a result of human experience and a knowledge of human nature. "Such rules are never thought to be arbitrary, but are stated by the courts as the effect of the natural bent of the normal mind."—Roberts v. Cleveland, 222 Ala. 256, 259, 132 So. 314, 316.

Despite the imperfections therein, we are of the opinion that when the will is carefully read in the light of the circumstances surrounding its execution, including the idiosyncracies of the testator, it was the intention of the testator to create an active trust, with his executors as trustees, charged with the duty and responsibility of caring for and operating the trust property to the end that testator's wife be cared for, and in the event the profits derived from the operation of the trust property during any given year were not exhausted in making adequate provision for the support and maintenance of testator's wife and in paying "all expenses * * * for the caring for and operation" of the estate, the then remaining net income to be divided equally between the six children named in Item Two of the will "or to the *heirs of any of those who may not be living.*" (Emphasis supplied)

A devise to the executors is not formally expressed in the will but it is generally held that in order to carry out the intention of a testator and prevent the will from failing of effect, a devise or bequest may be implied, although it has not been formally expressed in the will, unless the implication violates public policy or some settled rule of law and such an implication does not make a new will, but merely gives effect to the testamentary plan and purpose.—95 C.J.S. Wills § 595, pp. 783, 784. See Myrick v. Williamson, 190 Ala. 485, 67 So. 273; Meglemry v. Meglemry, 222 Ala. 229, 131 So. 906.

The word "trust" is not found in the will, but the fact that testator did not use express words creating a trust is not controlling.—Howison v. Baird, 145 Ala. 683, 40 So. 94; Wolosoff v. Gadsden Land & Building Corp., 245 Ala. 628, 18 So.2d 568. In Hodge v. Joy, 207 Ala. 198, 205, 92 So. 171, 177, we said:

"To create a trust no particular form of words is required; but any instrument

in writing signed by the party at the time of its creation or subsequently, manifesting the nature, subject-matter, and objects of the trust with reasonable certainty, may suffice. (Authorities cited). * * *"

See Gordon v. Central Park Little Boys League, 270 Ala. 311, 119 So.2d 23.

The words, "It is my desire that all my property be held intact for a number of years after my death, as will be more fully set forth hereinbelow," we do not consider as altogether precatory. We think the testator intended for those words to be treated by the executors-trustees as constituting direct and imperative instructions until the executors-trustees disposed of the trust estate as authorized in Item Three of the will. See Parrish v. Gamble, 234 Ala. 220, 174 So. 303; Thomas v. Reynolds, 234 Ala. 212, 174 So. 753; Smith v. Nelson, 249 Ala. 51, 29 So.2d 335.

There is no express provision in the will stating when or upon what contingency the trust shall terminate. We are of the opinion that the discretionary power conferred upon the executors-trustees to sell the trust property shows that the testator intended for the trust to terminate when the last of the trust property has been sold and the proceeds distributed in compliance with the terms and provisions of Item Three of the will. See Moss v. Brown, 253 Ala. 380, 44 So.2d 561. The will does not expressly provide that the executors-trustees could not sell the trust property until after the death of testator's wife, but such was his intent, in our opinion. In Item Two testator directer his executors to provide adequate support and maintenance for his wife "out of the profits of my said estate each year so long as she may live." And in Item Three of his will, testator provided that the proceeds from the sale or sales of his property be divided equally between "my immediate heirs or their decendents [sic]," thereby not including his wife, who was unquestionably the person whose needs

came first. In Miller v. Flournoy's Heirs, 26 Ala. 724, we said:

"Although the last clause in a will must prevail over a preceding clause which cannot be reconciled with it, and the particular intent must yield to the general, when the two are equally apparent, and so repugnant that both cannot stand; yet the great and cardinal rule of construction is, to give effect, if possible, to every part of the will."

We have heretofore indicated that it is our view that the testamentary trust created by the will in question was an active, not a passive or naked trust.—Gaddy v. Mullens, 215 Ala. 664, 112 So. 133; Atkins v. Stacy-Nolan Home Building Co., 217 Ala. 167, 115 So. 153. Being an active trust, the provisions of § 144, Title 47, Code 1940, have no application.—Henderson v. Henderson, 210 Ala. 73, 97 So. 353. Cf. § 145, Title 47, Code 1940; Nixon v. Nixon, 245 Ala. 43, 15 So.2d 561.

The fact that the persons named as executors (trustees) are also beneficiaries does not affect the validity of the trust. It is true that the same person cannot be at the same time sole trustee and sole beneficiary of the same identical interest, but a cestui que trust, a beneficiary, is not prohibited from occupying the position of trustee for his own benefit where he is a trustee for others as well as for himself.—Sisson v. Swift, 243 Ala. 289, 9 So.2d 891.

The question remains as to when the testator intended for the interest of his children named in Item Two to vest.

As we interpret the decree under review, the trial court construed the will as giving to testator's wife a life estate in the trust property, with the interest of his children vesting in them upon the death of the wife.

The provisions of Item Two of the will gave the testator's wife at least an interest for support during her lifetime. We see no occasion to decide the question as to whether the wife received a life estate as dis-

tinguished from an interest for support during her life.

We are unable to find any language in the will which tends to show an intention on the part of testator that the interest of his children named in Item Two should vest upon the death of his wife. The children's right to receive income from the operation of the trust property during a given year was secondary to the needs of the wife during her lifetime, but her death did not terminate or create any new right in the children, even though they were no longer secondary as to the distribution of income from the operation of the trust property.

We recognize the principle that in the absence of a clear showing of a contrary intent, estates will vest and intent to postpone vesting must be clearly established.—Stratford v. Lattimer, 255 Ala. 201, 50 So. 2d 420. In other words, the law favors a construction by which an estate will become vested at the earliest moment, and this is usually at death of the testator.—Pearce v. Pearce, 199 Ala. 491, 74 So. 952.

But the rule that the law favors the early vesting of estates will not be permitted to defeat testator's intention.—Bingham v. Sumner, 206 Ala. 266, 89 So. 479. See George v. Widemire, 242 Ala. 579, 7 So.2d 269.

We think the intention of Myrus L. Black would be defeated if we affirm the decree here under review by simply applying the rule that the law favors the early vesting of estates. In our opinion, Mr. Black, by concluding Item Two of his will with the words, "or to the heirs of any of those who may not be living," clearly showed that when the time came for divid-ing the net income derived from the operation of his lands in a given year, "after all expenses have been paid for the caring for and operation of my said estate, including adequate support for my said wife," he wanted the share that would have gone to a deceased child to go to that child's "heirs" and such intention would be defeated by a holding that the children's interest vested either upon the death of testator or that of his wife. We see no justification for ignoring the words last quoted above and we can conceive of no other reason why they were used. Those words were not necessary to enable a child of a deceased child to get the deceased child's share in the event he or she predeceased testator.—§ 16, Title 61, Code 1940. Moreover, the words last quoted above were not used in the sense of preventing a lapse but to identify those persons to whom anticipated profits should be paid.

In Item Three of the will testator provided that after his property is sold, the proceeds of the sale or sales are to be divided "equally between my immediate heirs or their decendents [sic]." Here again is language which we think shows that the testator did not intend that his property vest in his children prior to termination of the trust.

In view of the foregoing, we hold that the provisions of the decree of the trial court which we have heretofore set out are erroneous except for the last sentence thereof. It follows, therefore, that the decree of the trial court is reversed and the cause is remanded.

Reversed and remanded.

MERRILL, HARWOOD, MADDOX and McCALL, JJ., concur.