This appeal requires the Court to apply the law concerning reciprocal wills made by a husband and wife, each of whom had children by a former marriage and whose children were made beneficiaries of the estate of the surviving party. The trial judge found that the surviving spouse had violated the provisions of the reciprocal will by making inter vivos
transfers to her own children to the exclusion of her stepchildren. I believe that the trial judge erred, and I would reverse.
Frank and Bernice Whiteley both had children from previous marriages; they executed reciprocal wills that contained the following clauses:
 "THIRD ITEM: At my death I hereby give, devise and bequeath all the rest and residue of my estate, both real and personal, wheresoever situate, unto my spouse in absolute fee simple.
". . . .
 "FIFTH ITEM: My spouse and I are executing our wills at or about the same time and such wills are intended to be and should be construed [as] contractual and reciprocal wills. Neither wills [sic] shall be subject to revocation by it's [sic] maker without the consent of the other party."
Bernice's will also contained the following:
 "[I]n the event my said spouse shall predecease me, then in such event I give, devise and bequeath all my estate, both real and personal, wheresoever situate, of which I may die seized or possessed, or to which I may be or become entitled to have any interest or over which I may have any power of appointment, unto my children, Gwinnette Meads Bates and Travis Humphries, and my husband's children, Morris W. Whiteley, Bobby Whiteley, David Whiteley and Lanny Whiteley, in equal shares, share and share alike, in absolute fee simple, per stirpes and not per capita." (Emphasis added.)
Frank's will also had a similar provision to leave all his property to all their children equally in the event that Bernice died first. Frank died first, and Bernice took title to *Page 103 
all their property and began making gifts to her children.[1]
The trial judge made the following conclusions in his order:
 "Based upon both the language of the instruments at issue here (leaving the remainder of the estates to the couple's children 'in equal shares'), and, the facts established at trial, this Court concludes that Mrs. Bernice Whiteley's substantial inter vivos transfers of property to her own children were unreasonably large, and were not made in good faith (because they were not related to Mrs. Whiteley's daily needs or necessities, but instead were intended to defeat the purpose of the Whiteleys' reciprocal wills). Hence they violated the couple's written agreement, and should be set aside." (Emphasis original.)
When the trier of fact has the task of construing a will or a provision thereof, it must endeavor to ensure that the intent of the testator is effectuated. Bullard v. Lee, 470 So.2d 1197,1198 (Ala. 1985). "The polestar to guide a court in the construction of a will is the intent of the testator and that intent should be determined by considering the instrument as a whole and not by construing any subpart separately." McLean v.Brasfield, 460 So.2d 153, 155 (Ala. 1984). It is the intent of the testator "which controls the construction of a will, and such intention is to be arrived at by reference to the entire document, read in light of the circumstances under which the will was written." Crippled Children's Foundation v.Cunningham, 346 So.2d 409, 410 (Ala. 1977). As this Court stated in Black v. Black, 286 Ala. 233, 238, 238 So.2d 861, 865
(1970):
 "Construction of a will is always started with the proposition that the province of the court is to ascertain the intent of the testator from the language of the will, in connection with attending facts and circumstances which may shed light upon any apparent uncertainty arising from its terms or existing by reason of such facts and circumstances."
After reviewing the record, I believe that the trial court erred in determining that Bernice's gifts should be set aside. While the statements of law that the trial judge based his decision upon are correct, the wills in question do not fit the law stated. It is obvious that the trial judge based his decision upon his interpretation of a single section of the wills when he stated that the Whiteleys left "the remainder of the estates to the couple's children 'in equal shares.'" (Emphasis added.) However, the wills do not say that the survivor will leave the remainder of the joint estates to all the children equally; they say "in the event my said spouse shall predecease me, then in such event I give, devise and bequeath all my estate . . . [to the children] in equal shares, share and share alike." (Emphasis added). The trial court was correct that Bernice was contractually bound not to revoke or defeat her will, but her will did not say that she would preserve the joint estate and pass it on to the children equally; it said that she would pass her estate to the children equally, and this was done.
To construe the wills as the trial court did has the effect of holding that Frank left his estate to Bernice only for her to preserve it for their children, and that conclusion is defeated by the language in Frank's will that left his estate to Bernice in "absolute fee simple." He could have left her a life estate or he could have limited her ability to deplete his estate if that had been his intent. *Page 104 
The lawyer who drafted these wills testified that he discussed a number of options with the Whiteleys, that they expressed the desire to have all the deceased spouse's property pass to the other, that they did not want to restrict the right of the survivor to use the property in any manner the survivor wanted, and that they specifically rejected the option of using testamentary trusts or life estates. Both of the Whiteleys were in poor health when these wills were executed, and they expressed the desire that the survivor not be encumbered, especially in regard to the sale of any real estate. While the Whiteleys also expressed a desire to have all the children share equally in what was left after both of them died, they specifically told the lawyer that they wanted the survivor to have complete control over the property despite his warningsthat the survivor could deplete the estate under these wills.
Furthermore, the majority's blanket approval of the trial court's decision means that Bernice's children will have to pay back moneys and return gifts that were made to them in return for their care of their mother. The trial court never took into account the facts that Bernice's children cared for her and provided for her needs and that some of the moneys given to Bernice's son were paid back. Thus, the holding of the majority is clearly inequitable. I do not see how the gifts, such as a fairly inexpensive house trailer, furniture, and a septic system to Bernice's daughter, could be only an improper device to circumvent the reciprocal wills. The daughter moved all the way from Houston, Texas, with her family, in order to care for her ailing mother, and the majority says that the living provisions that the mother made for the daughter in return were improper and were designed only for circumventing the wills. Such a conclusion is baffling, to say the least.
I must dissent.
HORNSBY, C.J., concurs.
[1] These gifts included cash, furniture, real estate, a mobile home, the installation of a septic tank, and half the payments on an automobile. The trial court determined that the total value of these gifts was over $50,000. However, there was ample evidence that these gifts were in return for her children's taking care of her. There was testimony that Bernice had had asthma, bronchitis, crippling arthritis, a heart condition, emphysema, and high blood pressure, and that she took 27 different kinds of medicine. Bernice's daughter moved from Houston, Texas, in order to care for her mother, and Bernice provided the trailer next door for her daughter to live in while tending to her mother. There was also testimony that some of the gifts were repaid by Bernice's son and that he also paid for some of his mother's debts from his own money.
The trial judge did not take into account the son's payments or the need for Bernice to be cared for when he made his calculations of how much the gifts were.