[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 6, 2012
JOHN LEY
CLERK

No. 11-13732
Non-Argument Calendar

_____

D.C. Docket No. 3:09-cv-00255-WKW-TFM

THE ESTATE OF JACQUELINE MCCARN INGRUM,

Plaintiff - Appellant

versus

FINANCIAL FREEDOM SENIOR FUNDING CORP., INC.,

Defendant,

PACIFIC REVERSE MORTGAGE, INC.,
SECRETARY U.S. DEPARTMENT OF HUD,
FINANCIAL FREEDOM AQUISITION, LLC,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(February 6, 2012)

Before BARKETT, HULL and BLACK, Circuit Judges.

PER CURIAM:

The Estate of Jacqueline McCarn Ingrum ("the Estate") appeals the district court's summary judgment in favor of Pacific Reverse Mortgage, Inc. ("Pacific"), Financial Freedom Acquisition, LLC ("Financial Freedom"), and the Secretary of the U.S. Department of Housing and Urban Development ("the Secretary"), in the Estate's action seeking a declaratory judgment and quieting of title to real property known as "Homeplace." The original owner of Homeplace, Jacqueline McCarn Ingrum, died in 2004, and her son, Jerry G. Ingrum, was appointed executor of her will. Acting as executor, Ingrum conveyed Homeplace to himself and took out two mortgages on the property with Pacific and the Secretary. The grandchildren of Jacqueline Ingram, who were named in the will and claimed an interest in the property, sued in Alabama Probate Court seeking, *inter alia*, to set aside the mortgages. On October 19, 2007, the Alabama Probate Court ruled that Ingrum's deed to himself was void and that the mortgages did not attach to Homeplace, removed Ingrum as executor, and approved a transfer of Homeplace from Ingrum to the grandchildren by quitclaim deed. However, neither Financial Freedom, the assignee of Pacific's mortgage, nor the Secretary received notice of the State Probate Court proceedings prior to the entry of the order.

2

Financial Freedom and the Secretary refused to release the mortgages, protesting that the October 19 order was void for lack of notice.  The Estate then sued Pacific, Financial Freedom, and the Secretary (collectively, "the mortgagees"), in Alabama Circuit Court seeking declaratory judgment and quieting of title against them and claiming slander of title.  The Secretary removed the case to federal district court pursuant to 28 U.S.C. §§ 1444 and 2410(a).  The district court granted summary judgment to the mortgagees on all claims, ruling the State Probate Court's October 19 order void as inconsistent with due process, quieting title to Homeplace in Jerry Ingrum, and ruling that the mortgages on the property are valid.  The Estate now appeals, challenging each of these rulings.[1]

## A.    Declaratory Judgment Claim

The Estate first argues that the district court's determination that the

---

[1] The portions of the will relevant to the issues presented here provide as follows:

<u>Item VI.</u>

To my son, Jerry G. Ingrum, I give, devise and bequeath the real property or the "HomePlace" as described in Exhibit "A" attached to be used for and during his lifetime as a place to live.  If Jerry Ingrum should sell said Homeplace, it is my desire that the proceeds of the sale be divided as follows:

A.) Fifty pecent (50%) to Jerry G. Ingrum

B.) Remaining fifty percent (50%) to be divided equally between my two grandchildren, Julie Ingrum Brown and Charles M. Ingrum, Jr.

<u>Item VII.</u>

I hereby give, devise, and bequeath the rest, residue and remainder of my estate whether the same be real property, personal or mixed to my son JERRY G. INGRUM, in fee simple to dispose of as he deems fit and proper.

October 19, 2007 order issued by the Alabama Probate Court is void as inconsistent with due process because neither Pacific, Financial Freedom, nor the Secretary received notice is erroneous. Specifically, the Estate argues that these mortgagees were not entitled to notice of the Probate Court proceeding because, it claims, they were not bona fide mortgagees, and they were essentially notified of the Estate's interest in Homeplace through public records maintained by the Probate Court. We find this contention meritless.

The Due Process Clause protects an interested party's right to be notified of an opportunity to assert its defenses, regardless of whether they ultimately have merit. See Peralta v. Heights Med. Ctr., Inc., 485 U.S. 80, 86-87 (1988). An interest-holder's bona fide status is a defense against an otherwise superior claim arising from prior equity or conveyance. See Orso v. Cater, 133 So. 2d 864, 867 (Ala. 1961). Thus, regardless of whether the mortgagees received notice of the Estate's competing interest in Homeplace, due process nevertheless required that they be notified of the Probate Court proceedings in which they might assert this defense. See Peralta, 485 U.S. at 84.[2] The fact that the mortgagees may have

___

[2] The cases cited by the Estate do not address the issue of a non-bona-fide mortgage-holder's entitlement to notice of a proceeding against the mortgaged property, nor do they involve any due process claims. See Long v. Vielle, 549 So. 2d 968, 973 (Ala. 1989) (noting that interest-holder "actually testified at the trial of this matter" and "had ample opportunity to be heard" on issue of validity of title); First Ala. Bank of Huntsville v. Key, 394 So. 2d 67, 68-69 (Ala. 1981) (voiding judgment of condemnation because holder of judgment was not a bona fide

received notice of the Estate's competing interest in Homeplace in no way compromised their right to receive notice of the Probate Court proceeding in which the validity of the mortgages was adjudicated.[3]

## B. Quiet Title Claim

The Estate next argues that Jerry Ingrum received only a life estate in Homeplace under the will and that the grandchildren were bequeathed the remainder interest. The district court rejected this argument on the basis of the plain language in the will. The district court held that the will's provision bequeathing Homeplace to Jerry Ingrum "to be used for and during his lifetime as

---

interest-holder); Leslie v. Click, 128 So. 2d 170, 172 (Ala. 1930) (holding that title in subsequent purchaser was subject to prior mortgage because purchaser had notice of the mortgage). Although Neal v. Neal, 856 So. 2d 766 (Ala. 2002), unlike these other cases, did involve a due process challenge to the validity of a prior judgment, the Alabama Supreme Court in Neal held that the party allegedly deprived of due process, the Florida Attorney General, was not required to receive notice because Florida had no interest in a charitable trust that was administered in Alabama. See Neal, 856 So. 2d at 780-81. Here, there is no disputing that the mortgages are a form of property under Alabama law that gave the mortgagees an interest at stake in the Probate Court proceedings. See Trauner v. Lowrey, 369 So. 2d 531, 534 (Ala. 1979) ("Execution of a mortgage passes legal title to the mortgagee.").

[3] We do not address the Estate's arguments that the mortgagees were not denied due process because their interests were virtually represented by Jerry Ingrum in the Probate Court proceeding, see EEOC v. Pemco Aeroplex, Inc., 383 F.3d 1280, 1286-87 (11th Cir. 2004) (explaining doctrine of virtual representation), and that the district court improperly sat as an appellate court over the Probate Court's rulings, in violation of D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983). The Estate raised both arguments for the first time in its Rule 59(e) motion for reconsideration despite the fact that these arguments could have been made before the district court's summary judgment. See Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 957 (11th Cir. 2009) ("A motion for reconsideration cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.") (internal quotation marks omitted).

a place to live" created a life estate in Jerry Ingrum and that Ingrum also inherited the remainder interest in the property through the will's residuary clause. Under Alabama law, the two interests merge into a fee simple absolute. See Kinard v. Jordan, 646 So. 2d 1380, 1383 (Ala. 1995). The Estate contends that this holding was error because, it argues, the will creates a remainder interest in the grandchildren by providing that if Jerry Ingrum sells Homeplace, "it is my desire that the proceeds of the sale be divided" in half, with half to be divided equally among the grandchildren.

However, this clause begins with the phrase "it is my desire", therefore, it is precatory only and does not convey a remainder interest to the grandchildren. See Nevin v. Nevin, 366 So. 2d 266, 268 (Ala. 1979) ("Words of entreaty, request, desire, wish, or recommendation employed in wills" are precatory only and therefore "are distinguishable from direct and imperative terms."). The Estate argues that words expressing a desire or wish have been interpreted as imperative, but this has been done only in order to give effect to the plain meaning of the words. Thus, in Black v. Black, the Alabama Supreme Court construed the phrase "[i]t is my desire that all my property be held intact for a number of years after my death, as will be set forth more fully hereinbelow" as imperative directions that the will executors should not sell any portion of the estate until other conditions

6

denoted in the will had been met. 238 So. 2d 861, 867 (Ala. 1970) (emphasis added). Here, by contrast, the phrase that the Estate argues creates a remainder interest in the grandchildren contains no reference to a remainder interest, but merely expresses the testator's wishes in the event Homeplace is sold.[4] Therefore, we reject the Estate's contention that the sale clause must be read as somehow bequeathing a remainder interest to the grandchildren.

The Estate also argues that, even if the plain language of the will does not bequeath a remainder interest to the grandchildren, the will is ambiguous and should be interpreted with parol evidence. Parol evidence is inadmissible to show the testator's intent unless the will contains latent ambiguity. See Hamilton v. Employees' Ret. Sys., 14 So. 3d 839, 843 (Ala. 2009). "[A] latent ambiguity occurs where the language is clear and intelligible, but when considered in light of certain extraneous facts, it takes on a multiple meaning." Jacoway v. Brittain, 360 So. 2d 306, 308 (Ala. 1978). Here, the Estate argues that testimony by the grandchildren should be admitted to prove that Jacqueline Ingram intended to give

---

[4] The Estate's reliance on Barnette v. Estate of Anderson, 966 So. 2d 915 (Ala. 2007) is misplaced. In Barnette, the court found textual support for the creation of a life estate in will provisions that expressly prohibited the sale of the subject property throughout the devisees' "natural lives" and that disposed of the remainder interest in the property by bequeathing it to the daughters' heirs. Id. at 919. Here, by contrast, the text of the will plainly anticipates that Jerry Ingrum will retain the power to sell Homeplace during his lifetime, and contains no express reference to or disposition of a remainder interest in the property except to make him the beneficiary of the residuary clause.

them a remainder interest. However, this testimony is inadmissible to vary the written terms of the will, which make no provision for a remainder interest in the grandchildren. See Schowalter v. Schowalter, 128 So. 458, 459 (Ala. 1930) (holding that parol evidence is "inadmissible to show intent not deducible from terms employed" by the will).[5] Accordingly, we reject the Estate's contention that the will should be interpreted in light of parol evidence.

## C. Slander of Title

The Estate fails to advance any argument in its initial brief seeking reversal of the district court's adverse summary judgment on its slander of title claim, but insists instead that, if we were to reverse the district court's ruling on the Estate's quiet title and declaratory judgment claims, we would also be required to reverse and remand the district court's adverse grant of summary judgment on slander of title. Because we affirm the district court's order on the other two grounds, and we are given no independent reason to reverse its judgment on slander of title, the Estate has waived any further challenge to the district court's ruling on the slander of title claim. See Adler v. Duval Cnty. Sch. Bd., 112 F.3d 1475, 1481 (11th Cir.

---

[5] Insofar as the Estate argues that the district court was bound to follow the order of the Probate Court in its construction of the will, because the Probate Court proceeding denied the mortgagees of the notice that the Due Process Clause entitled them to receive, the Probate Court's judgment was void and the district court was in no way bound by its reasoning. See Peralta, 485 U.S. at 84 (holding that adequate notice is a prerequisite to according a judgment finality).

1997) ("The waiver rule requires that the appellant state and address argument to the issues the appellant desires to have reviewed by this Court in the appellant's initial brief . . . .").

**AFFIRMED**.