18 So.2d 568

**WOLOSOFF et al. v. GADSDEN LAND & BUILDING CORPORATION.**

7 Div. 795.

Supreme Court of Alabama.

June 1, 1944.

Rehearing Denied June 22, 1944.

Frank Bainbridge and Bainbridge & Mims, all of Birmingham, and Julius S. Swann, of Gadsden, for appellant.

630

Hood, Inzer, Martin & Suttle, of Gadsden, for appellee.

FOSTER, Justice.

The question on this appeal is whether the employees of Goodyear Tire and Rubber Company (hereafter referred to as Goodyear) have such an interest in a contract between Goodyear and Gadsden Land and Building Corporation (hereafter referred to as the Housing Company) as to prevent Goodyear and the Housing Company from agreeing to rescind the contract, and permit the Housing Company to sell the land to complainants freed from said contract.

The Housing Company was stipulated by the contract to own or that it will acquire five hundred and seventy-six acres of land, and shall improve it "in order to provide at all times adequate housing facilities for the personnel employed by Goodyear," and shall lease the houses to such employees on stipulated rental terms, dependent on the size of the house, in preference to others; or to sell them on stipulated conditions. Providing that any modification must be in writing and executed with the same dignity as this agreement. The contract had attached as exhibits a form of lease and of sale (respectively) to be used by the Housing Company, separately for employees and non-employees of Goodyear. The agreed statement of facts is short so far as here material, and is as follows:

"3. At the time and just prior to the execution of the contracts, copies of which are attached to the bill of complaint as exhibits, the Goodyear Tire & Rubber Company of Alabama, had under consideration with the people of Gadsden the question of locating a large manufacturing plant at Gadsden for the manufacture of automobile casings, tires, tubes and the like, at which time the Goodyear Tire & Rubber Company also had under consideration the location of said plant at Atlanta, Georgia; that the question arose that Gadsden was a much smaller city than Atlanta, it having at that time a population, according to the federal census of something like 24,000, and that the matter of housing facilities for the Goodyear employees was of paramount importance to Goodyear.

"It is further agreed that after some negotiations, the Goodyear Tire & Rubber Company of Alabama agreed to locate said manufacturing plant at Gadsden conditioned that the people of Gadsden would give the Goodyear Company assurance that ample housing facilities for its employees would be provided at Gadsden, such as would be afforded at Atlanta should Goodyear locate said plant at that city. It was the contention of Goodyear's officers that their manufacturing processes and factory would require a high degree of skilled employees and that the number with which the operations would begin would be something like 1100 to 1200. The result of that proposition from Goodyear was the contracts in question, which were made in advance of the employment by Goodyear of its employees at Gadsden.

"As a result of the execution of the contracts, Goodyear located its manufacturing plant at Gadsden and soon thereafter some 472 houses were constructed by Gadsden Land and Building Corporation in compliance with the terms of said contracts.

"That there has never been any occasion or demand for the building of any additional houses than the 472 and that at this time there reside in the houses only 265 employees of Goodyear, the remaining houses being occupied by the public generally.

"In the beginning, Goodyear employed about 1150 employees which number has varied from time to time during the elapsing fifteen years, there being in the employ of Goodyear at this time 3340 employees and of the total number of employees of Goodyear at this time only about seven per cent have elected to reside in the houses in question.

"4. That practically all of the capital stock of the respondent Building Corporation was sold to and is now owned by citizens of Gadsden and Alabama.

"5. Since the execution of said contracts in question a large number of the former employees of Goodyear have died, moved away and are now located at points unknown."

One of the employees is made a party as the representative of them all under authority of Equity Rule 31(a) (3), Code 1940, Tit. 7 Appendix. No allegation is made in the pleading or agreed facts whether this employee or any others have made lease or purchase contracts. But the agreed facts show that two hundred and sixty-five of them reside in houses here involved. We will presume that it is by virtue of the contract here sought to be rescinded and possibly under formal lease.

■ The rights of a third party beneficiary of a contract between others, in which he furnishes no part of the consideration, are said to depend upon the question of whether the contract, construed in the light of attendant circumstances, is apparently for the direct benefit of such third party, or whether his benefits under it are merely incidental, indirect or consequential. Fidelity & Deposit Co. v. Rainer, 220 Ala. 262, 125 So. 55, 77 A.L.R. 13; Barlowe v. Employers Ins. Co., 237 Ala. 665, 188 So. 896; 5 Ala.Dig., Contracts, p. 79, ☞187; 12 Am.Jur. 833, section 281; Lovejoy v. Bessemer Waterworks Co., 146 Ala. 374, 41 So. 76, 6 L.R.A.,N.S., 429, 9 Ann.Cas. 1068; Gulf Compress Co. v. Harris, Cortner & Co., 158 Ala. 343, 48 So. 477, 24 L.R.A.,N.S., 399; Shine v. Nash Abstract Co., 217 Ala. 498, 117 So. 47.

The law governing this situation, while dependent upon that principle, is treated under different legal topics consistent with the nature of the contract and of property rights to which it relates. Such a contract sometimes creates in the third party a trust enforcible in equity with respect to the property involved. There are many situations in which third parties are held to have a beneficial interest in property created without their procurement and without furnishing any of the consideration.

■ To create such a trust no particular form of words is necessary; but the instrument should with reasonable certainty manifest the nature, subject matter and objects to be attained. Wiggs v. Winn, 127 Ala. 621, 29 So. 96; Bibb v. Hunter, 79 Ala. 351; Hodge v. Joy, 207 Ala. 198 (13 and 14), 92 So. 171; Teal v. Pleasant Grove Local Union, 200 Ala. 23, 75 So. 335; Cresswell v. Jones, 68 Ala. 420.

■ It is said in Wiggs v. Winn, supra, that any agreement made by a person having the power to dispose of property whereby he agrees or directs that a particular parcel of property shall be held or dealt with in a particular manner for the benefit of another, a court of equity raises a trust in favor of such other person against him who made the agreement. But that principle is consistent with the one first above mentioned, that the benefits must be intended directly for the third person to raise such a trust. The principle has the same qualities whether there is property involved, or some other contractual benefits. A person cannot enforce a trust merely because he *incidentally* may profit from the performance of a contract respecting property. 1 Scott on Trusts 643, 645, section 126. And even though the contract may create an equitable trust in some third person, it may be revoked by the parties to it, without the consent of such third person, dependent upon the nature of the right in which he is to be benefited, and the extent of the benefits thus conferred, even though it is apparent from the contract that it is intended at least in part directly and immediately for his benefit. It is one thing if the contract creates an unconditional vested beneficial interest, but it is something else if such interest is conditional and dependent upon acceptance by the third party or upon the doing of some act by him which is optional with him.

■ We have a line of cases which hold on this theory that when by contract between two persons one agrees to pay creditors of the other, such creditors may sue the new promisor on that promise without further consideration, but if the two parties to that contract rescind it by mutual

agreement before the creditor changes his position in reliance on it, such rescission is operative against the creditor and destroys his rights under the contract. Clark v. Nelson, 216 Ala. 199, 112 So. 819, 53 A.L.R. 173; Copeland v. Beard, 217 Ala. 216, 115 So. 389, 390.

It is said in the latter case: "The contract, in the nature of it, is an open offer to the creditor. His assent while the offer is open is all that is required. * * * The tripartite contract being consummated, it cannot be rescinded without the consent of all. It follows that the creditor's assent to the contract, made known to the promisor, who is expected to pay, is the only change of position required. But the assent must be to a promise in force at the time."

The same principle seems to be recognized elsewhere, and inheres in the very nature of contract rights, so expressed. 13 Corpus Juris, p. 602, § 625, 17 C.J.S. Contracts, § 390; 12 Amer.Jur. 843, 844, sections 290 and 291; 81 A.L.R. 1293, 1294.

■ The transaction here in question secures to the employees of Goodyear an option to obtain certain benefits specifically set forth. This right is said to be a springing or shifting use when it is for a class whose personnel is subject to future change. Bibb v. Bibb, 204 Ala. 541, 86 So. 376; 26 R.C.L. 1176, section 11. The theory of it is applicable to option rights in property made for the benefit of third parties. It is based on the principle by which all contract rights are determined. And since there was a valuable consideration between the original parties to the contract, neither of them could withdraw the option over the objection of the other party to the contract so as to make it inoperative according to its terms. Bethea v. McCullough, 195 Ala. 480, 70 So. 680; Ross v. Parks, 93 Ala. 153, 8 So. 368, 11 L.R.A. 148, 30 Am.St.Rep. 47.

■■ It is clear that when a contract is made between two persons, whereby the owner of land for a valuable consideration agrees to extend to some third person an option to rent or buy the land or some portion of it for a named consideration, such third person may accept the option while it is still open and any contract he may make or action taken in compliance with the terms of the option will fix for him a status which is not revocable by an agreement between the original parties thereafter made, nor by any conduct of theirs after that time. But when such third party has neither accepted nor claimed a benefit under the original agreement, the parties may without restriction rescind or modify the contract eliminating the option which had been extended to such third party beneficiary. 66 Corpus Juris 729, section 290.

■ The reserved right to modify by mutual agreement is no more than a stipulation of a legal right, otherwise existing (5 Ala.Dig. p. 96, ☞236), and does not affect any lease or purchase agreement by the employees made before modification.

■ Only one person is made a party to represent all the employees—some three thousand. There is nothing in the pleading nor agreed statement of facts to show directly that any of the employees have accepted any option right extended to them by the contract, though it is implied as to two hundred and sixty-five of them. The contract is clearly for the direct benefit of the employees, jointly with that of Goodyear. The only benefit to Goodyear is to secure facilities available to its employees so that the employees themselves may be available to Goodyear. But the facilities are directly and immediately for the use of the employees in preference to all others. Indeed the purpose of the contract is stipulated to be "in order to provide at all times adequate housing facilities for the personnel employed by Goodyear" by making available for leasing to such employees any house so long as it is unsold, at stipulated sums dependent upon the size of the house; or by sales to employees subject to stipulated conditions.

The pleading and agreed statement of facts and the decree of the court are all based upon a status which does not state expressly whether employees have made contracts to lease or purchase and which does not take that contingency into consideration.

While the benefits so extended to employees are direct and immediate, they are only option rights created without any consideration emanating from the employees, and therefore are revocable by mutual agreement of the original parties to the extent that they have not been accepted by employees in such manner as to make them parties and bound to a performance under the terms of the option either as lessees or purchasers. But as

to those employees who may have become lessees or purchasers of houses and lots as authorized in the contract between Goodyear and the Housing Company all the terms of that contract beneficial to them are thereby fixed so long as their status so remains as a lessee or purchaser. Authorization to accept the option given to Goodyear employees in the contract was restricted to the extent that employees could accept the option in one of two ways, and not otherwise, viz.: (1) By purchase; (2) by becoming tenants, either in accordance with the provisions of the lease made a part of the contract or under some other lease, to the form of which Goodyear had consented in writing. It follows that only those employees whose status was that either of purchaser or lessee as aforesaid when Goodyear and the Housing Company rescinded the contract involved, on May 22, 1944, have, or can have, any rights under that contract. The rights of such purchasers or lessees under the contract are limited by the terms and provisions of their respective sales contracts or leases, and these rights may be relinquished by the employees voluntarily abandoning their status as purchasers or lessees or may be terminated by the Housing Company, or its assigns, if provisions authorizing the termination of such rights appear in the employees' contracts of sale or lease. Such authority in the Housing Company, or its assigns, to terminate the rights of employee-tenants affirmatively appears in the lease which is made Exhibit "B" to the contract. It, therefore, follows that the cancellation or termination of any lease in accordance with its provisions would terminate all rights of such tenant under the contract and under the lease. Subject to the rights, as herein defined, of employees whose status is now that of purchasers or lessees, the contemplated sale of the lands by the Housing Company to complainants would therefore convey said lands freed from the contract.

The decree of the circuit court in equity is therefore modified so as to declare that the employees of Goodyear were intended to be directly benefited, at their option, by the contract between Goodyear and the Housing Company. But that the agreement for a sale of the property by the Housing Company to complainants will have the effect, when consummated, of destroying all rights granted to the employees of Goodyear under the contract, except to the

extent that employees shall have heretofore accepted an option under its terms. To that extent their rights as herein defined will not be affected by the sale of the lands to complainants. As so modified, the decree is affirmed.

Modified and affirmed.

GARDNER, C. J., and THOMAS and STAKELY, JJ., concur.