111 So.2d 906

**ADAMS SUPPLY CO.**

v.

**UNITED STATES FIDELITY & GUARANTY CO. et al.**

3 Div. 805.

Supreme Court of Alabama.

March 26, 1959.

Rehearing Denied May 14, 1959.

Knabe & Nachman and Jack Crenshaw, Montgomery, for appellant.

**172**

Rushton, Stakely & Johnston, Montgomery, for appellee.

LAWSON, Justice.

On, to-wit, June 29, 1950, Dallas Homes, Inc., Clover Homes, Inc., and Happiness Homes, Inc., hereafter referred to as owners, entered into contracts with Folmar-Flinn Corporation as general contractor, hereafter referred to as Folmar-Flinn, for the construction of a large number of dwellings in the City of Montgomery.

On July 25th and 27th, 1950, Folmar-Flinn as general contractor entered into subcontracts with J. B. Whitehead, doing business as Whitehead Plumbing and Heating Company, hereafter referred to as Whitehead, for the plumbing and heating work required under Folmar-Flinn's contracts with the owners. These subcontracts contain the following provisions, among others:

"J. B. Whitehead Plumbing and Heating Company agrees to furnish to Folmar-Flinn Corporation *a payment and performance bond* with surety satisfactory to Folmar-Flinn Corporation, in the penal sum of [a different amount as to each of the three subcontracts] which said payment and performance bond shall be conditioned as is usual and customary in such bonds; provided, however, that the premium upon said payment and performance bond shall be borne by Folmar-Flinn Corporation. [Emphasis supplied.]

" * * * J. B. Whithead Plumbing and Heating agrees to promptly pay all items of labor and materials going into said work not later than the 10th of the month following delivery to the job site or installation as to materials and equipment and agrees to pay all labor weekly. In all events, J. B. Whitehead Pumbing and Heating Company agrees to pay for such labor, materials and other charges in such a manner that there will be no lien against the General Contractor or the owner. * * *"

On the same days that the subcontracts were entered into United States Fidelity and Guaranty Company, a corporation, hereafter referred to as U.S.F. & G. executed bonds as surety for Whitehead as principal with Folmar-Flinn as sole obligee. Those bonds were not conditioned as provided in the subcontracts, but were conditioned as follows:

"Now, Therefore, The Condition of the foregoing obligation is such that if the said Principal shall well and truly indemnify and save harmless the said

Obligee from any peculiar loss resulting from the breach of any of the terms, covenants and conditions of the said contract on the part of the said Principal to be performed, then this obligation shall be void; otherwise to remain in full force and effect in law; Provided, however, that this Bond is issued subject to the following conditions and limitations: * * *."

Adams Supply Company, a corporation, hereafter referred to as Adams, supplied Whitehead with the plumbing and heating equipment which Whitehead used in attempting to perform his subcontracts with Folmar-Flinn. Folmar-Flinn was aware of the fact that Adams was supplying Whitehead as early as August of 1950.

On October 14, 1950, Whitehead wrote Folmar-Flinn, with copy to Adams, a letter in pertinent part as follows:

"Reference is herewith made to the subject 146 units that we have under contract with you.

"It is requested that all future payments due us for performance of this work be made in the form of checks payable jointly to J. B. Whitehead and Adams Supply Company.

"This acknowledges that said Adams Supply Company is material supplier for the subject projects.

"It will be greatly appreciated if you will acknowledge your cooperation with this request."

At the time the above quoted letter was presented to Folmar-Flinn, Adams claimed Whitehead owed it the sum of $11,887. Thereafter Folmar-Flinn paid to Adams and Whitehead jointly the sum of $9,692.87 which amount Adams claimed to be $2,194.-13 less than the amount which Whitehead owed Adams on October 14, 1950.

Whitehead was unable to completely perform his subcontracts with Folmar-Flinn and subsequently went into bankruptcy.

In June of 1951, Adams filed its bill in the circuit court of Montgomery County, in equity, against U.S.F. & G. The bill sought declaratory relief only and prayed that the court declare that U.S.F. & G. was liable to Adams for the sum of $15,545.69 with interest from October 25, 1950, which sum represents the entire amount which Whitehead owed Adams on supplies furnished and used in carrying out Whitehead's subcontracts. The bill further prayed as follows:

"If complainant be mistaken in the relief prayed for, then complainant prays that this Honorable Court will render a declaratory judgment and decree stating that respondent is responsible for the amount of $2,194.13, with interest from October 25, 1950."

A demurrer interposed by U.S.F. & G. was sustained to the bill filed by Adams. Thereafter Adams filed a bill wherein the original bill was completely redrafted and Folmar-Flinn and Whitehead were added as parties respondent. The substituted bill like the original bill sought only declaratory relief. U.S.F. & G. interposed a demurrer to the substituted bill which the trial court and counsel for all parties treated as having been filed on behalf of Folmar-Flinn and Whitehead, as well as U.S.F. & G. The demurrer contained grounds addressed to the bill as a whole and to certain so-called aspects. The demurrer was sustained to the bill as a whole and to the several aspects which the demurrant conceived the bill to encompass. Adams appealed to this court. The averments of the substituted bill are fully set out in the opinion written on that appeal. We reversed and remanded. Adams Supply Company v. United States Fidelity & Guaranty Co., 265 Ala. 178, 90 So.2d 284. Our reversal was predicated on the ground that the substituted bill showed a justiciable controversy which the respondents did not want settled on demurrer.

After remandment the respondents, U.S. F. & G. and Folmar-Flinn, answered the substituted bill. Adams later filed two amendments. U.S.F. & G. and Folmar-Flinn answered the substituted bill, as amended.

Following a hearing wherein the testimony was taken in the presence of the trial court, the final decree was entered, the declarations of which are adverse to Adams. From that decree Adams has appealed to this court.

The decree of the trial court, including the court's findings as to the facts, reads as follows:

"This case coming on to be heard was submitted for final decree upon the Bill of Complaint as last amended and the answer of the Respondents, Folmar-Flinn Corporation and United States Fidelity & Guaranty Company, as last amended, the Exhibits and the testimony taken orally before the Court, and upon consideration of the same, the Court finds as follows:

"1. That Respondent, Folmar-Flinn Corporation, in 1950 as general contractor entered into contracts with Dallas Homes, Inc. for the construction of 50 housing units, with Clover Homes, Inc. for the construction of 41 housing units and with Happiness Homes, Inc. for the construction of 55 housing units, all in the City of Montgomery, Alabama. That on July 25, 1950, the Respondent J. B. Whitehead doing business as J. B. Whitehead Plumbing & Heating Company entered into three (3) subcontracts with the Respondent Folmar-Flinn Corporation for the plumbing and heating work in said housing units, and that said subcontracts contained among others the following clauses:

"'J. B. Whitehead Plumbing & Heating Company agrees to furnish to Folmar-Flinn Corporation a payment and performance bond, with surety satisfactory to Folmar-Flinn Corporation, in the penal sum of (different amount for each subcontract), which said payment and performance bond shall be conditioned as is usual and customary in such bonds; provided, however, that the premium upon said payment and performance bond shall be borne by Folmar-Flinn Corporation.

"'* * * J. B. Whitehead Plumbing & Heating agrees to promptly pay all items of labor and materials going into said work not later than the 10th of the month following delivery to the job site or installation as to materials and equipment and agrees to pay all labor weekly. In all events, J. B. Whitehead Plumbing & Heating Company agrees to pay for such labor, materials and other charges in such a manner that there will be no lien against the General Contractor or the owner * * *'

"That on, to-wit, July 25, 1950, the said three (3) subcontracts being signed by Respondents Folmar-Flinn Corporation and J. B. Whitehead, and while still executory, were modified by the mutual assent of said Folmar-Flinn Corporation and J. B. Whitehead so as to require the Respondent Whitehead to furnish to the Respondent Folmer-Flinn Corporation bonds on each of the said three (3) subcontracts with Respondent United States Fidelity & Guaranty Company as surety on its bond form 'Contract 12–14'.

"That the Respondents J. B. Whitehead and the Respondent Folmar-Flinn Corporation, pursuant to their said subcontracts as modified, requested that the Respondent United States Fidelity & Guaranty Company issue its bonds on its bond form 'Contract 12–14' covering each of the said subcontracts, and that the Respondent United States Fidelity & Guaranty Company did issue its bonds on its bond forms 'Contract 12–14' which were conditioned as follows:

"'Now, therefore, the Condition of the foregoing obligation is such that if the said Principal shall well and truly indemnify and save harmless the said Obligee from any pecuniary loss resulting from the breach of any of the terms, covenants and conditions of the said contract on the part of the said Principal to be performed, then this

obligation shall be void: otherwise to remain in full force and effect in law; * * * '

"That the said bonds as issued were accepted as being the bonds required by the said subcontracts as modified.

"2. That the Complainant, Adams Supply Company, a corporation furnished materials to the Respondent J. B. Whitehead Plumbing & Heating Company which were used by him in the performance of his subcontracts, but that the Complainant Adams Supply Company did not rely upon the said subcontracts executed by the Respondents Folmar-Flinn Corporation and J. B. Whitehead in extending credit to the Respondent J. B. Whitehead for materials, or in furnishing materials for use in the performance of said subcontracts. Nor did the Complainant Adams Supply Company rely upon any representations with reference to the said subcontracts, or to the type of bonds furnished by the Respondent United States Fidelity & Guaranty Company in extending credit for or furnishing said materials. That no representations were made by the Respondents to the Complainant that any bonds had been executed for Complainant's benefit and protection in furnishing materials to J. B. Whitehead Plumbing & Heating Company.

"3. That Complainant Adams Supply Company, a corporation, did not comply with the requirements of Title 33, Section 37 et seq., Code of Alabama of 1940, relating to Mechanics and Materialmen's liens.

"4. That the suretyship obligations undertaken by the Respondent United States Fidelity & Guaranty Company were solely for the named obligees and provided no rights of recovery to Complainant thereunder.

"It is, therefore,

"Ordered, Adjudged and Decreed and Declared by the Court as follows:

"1. That the bonds executed by the Respondent United States Fidelity & Guaranty Company as surety for the Respondents, Folmar-Flinn Corporation and J. B. White-head were not for the benefit of Complainant Adams Supply Company, but were for the sole indemnity and benefit of the named obligees therein; that the Complainant Adams Supply has no right of recovery against the Respondents Folmar-Flinn Corporation and United States Fidelity & Guaranty Company thereon.

"2. That the Complainant Adams Supply Company has no lien on the premises of Dallas Homes, Inc., Clover Homes, Inc. nor Happiness Homes, Inc.

"3. That the Respondents Folmer-Flinn Corporation and United States Fidelity & Guaranty Company are not indebted to the Complainant Adams Supply Company.

"4. That the costs to be taxed by the Register be paid by Complainant Adams Supply Company, for which execution may issue.

"Done this the 5 day of April, 1957."

In the brief filed on behalf of appellant, it is said in part:

"Adams Supply Company is entitled to a lien against Dallas-Clover and Happiness Homes in the amount of $15,545.69 with interest. It is also entitled to a lien on the unpaid balance due Folmar-Flinn from these owners. The court below denied this relief on the theory that Adams had not complied with the mechanics' and materialmen's laws of Alabama (Title 33, § 37 et seq., Code of Alabama 1940)."

Adams was not entitled to a declaration to the effect that it has a lien on the property of Dallas, Clover and Happiness Homes. Those corporations are the owners of the property against which Adams says it is entitled to a lien. They are not parties to this litigation. In Statutory actions to enforce mechanics' liens this court has held that the owner of the property against which the lien is sought to be enforced is a necessary party. Roman v. Thorn, 83 Ala. 443, 3 So. 759; Hughes v. Torgerson, 96 Ala. 346, 11 So. 209, 16 L.R.A. 600, 38 Am.St.Rep. 105; Sorsby v. Woodlawn

Lumber Co., 202 Ala. 566, 81 So. 68. Section 166, Title 7, Code of 1940, provides in part as follows:

"All persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. * * *"

We do not want to be understood as entertaining the view that Adams would have been entitled to a favorable declaration in this respect under the pleadings and proof even if the owners had been parties.

The letter of October 25, 1950, did not constitute an assignment and Folmer-Flinn was entitled to withhold from Whitehead an amount necessary to complete the plumbing and heating after Whitehead failed to fulfill his subcontract. See Standard Sanitary Mfg. Co. v. Aird, 221 Ala. 520, 129 So. 285.

The bonds here involved are conditioned so differently from the bond involved in Fidelity & Deposit Co. of Baltimore, Md. v. Rainer, 220 Ala. 262, 125 So. 55, 77 A. L.R. 13, as to make the holding in that case inapplicable. In the Rainer case, supra, Condition Five of bond was as follows: "Shall pay all persons who have contracts directly with the principal for labor and material, then this obligation shall be null and void; otherwise it shall remain in full force and effect."

All other insistencies for reversal are dependent on a holding by this court that the trial court erred in its findings of fact. We cannot so hold.

For emphasis, we refer to the favorable presumption of correctness attending the trial court's conclusion on issues of fact where the evidence is taken in the presence of the court. Under such circumstances we will not disturb the trial court's conclusion on issues of fact unless palpably erroneous and against the great weight of the evidence; and it is not nec-essarily what view the appellate court might have of the evidence, but if under any reasonable aspect the decree below is fairly supported by credible evidence, it is our duty to affirm. Lane v. Bruner, 236 Ala. 269, 182 So. 5; Penny v. Penny, 247 Ala. 434, 24 So.2d 912. Aided by this presumption it is clear the decree must be affirmed.

Affirmed.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.