**Christopher W. ROSS, Individually and d/b/a 4R Ornamental Iron Company, et al., Plaintiffs-Appellees,**

v.

**IMPERIAL CONSTRUCTION COMPANY, INC. and Imperial Group, Ltd., Defendants-Appellants.**

No. 76–3206.

United States Court of Appeals, Fifth Circuit.

May 5, 1978.

I. David Cherniak, Horace Moon, Jr., Mobile, Ala., for Imperial Group, Ltd.

Irving Silver, Mobile, Ala., for C. Ross et al.

George W. Oglesby, Mobile, Ala., for D. W. Coleman, etc.

Daniel A. Pike, Mobile, Ala., for Temp Control, Inc.

Before TUTTLE, COLEMAN[*] and CLARK, Circuit Judges.

[*] Judge Coleman did not participate in the consideration or decision of this case. Pursuant to 28 U.S.C. § 46(d), the case is decided by a quorum of the court.

[1]. Imperial Group and Imperial Construction Co. were, at the time of suit, Georgia corporations. All of the appellees either resided or were incorporated in Alabama. Jurisdiction being founded on diversity of citizenship, 28 U.S.C. § 1332, our decision on the merits is to be guided by Alabama decisional law. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

[2]. Appellees, the plaintiffs below, include: (1) Temp Control, Inc.; (2) Southern Pipe and Supply Co.; (3) Drummond W. Coleman, individually and d/b/a Coleman Drywall Service, Inc.; and (4) Christopher W. Ross and Raymond Ross, d/b/a 4R Ornamental Iron Co.

TUTTLE, Circuit Judge:

The question presented on appeal is whether, under Alabama law,[1] appellees are entitled to recover from Imperial Group, Ltd. sums due and owing under subcontracts with Imperial Construction Co. The district court, following a consolidated trial without a jury, entered judgments against Imperial Group on the theory that appellees[2] were third party beneficiaries of a "Completion Guarantee" executed by Imperial Group and the First National Bank of Mobile, Alabama. We reverse.

On September 20, 1973, one Lenn Christie obtained a $2.8 million construction loan from the First National Bank of Mobile, Alabama [hereinafter "the Bank"]. A note for the full amount of the loan plus interest and a first mortgage in favor of the Bank were executed. The loan proceeds were intended to supply interim financing for construction of the "Hickory Knoll Apartments" in Mobile. According to the Loan Agreement, Christie had secured a permanent mortgage commitment from Central Savings Bank of New York.

Some eight months later, on May 6, 1973, Imperial Construction Co. acquired Christie's interest in the real property and the construction project and assumed the obligation owing under the note. By the terms of a "Release and Assumption Agreement," the Bank released Christie from all liability and obligations under the note and mortgage. That same document obligated Imperial Construction to assume the indebtedness and to perform covenants contained in the note, mortgage and construction loan agreement. Both the original note and the mortgage were amended to reflect a total indebtedness of $3.1 million.

In connection with the May 6 closing, Imperial Group [3] was called upon to execute two instruments of guaranty. The first, a "Guaranty Agreement," shows that Imperial Group "agreed to assume and guarantee payment of all obligations arising out of [the amended] Promissory Note" and "to be bound by all of the terms and provisions, appearing on the face of any note or notes evidencing indebtedness and of any renewal notes." The second instrument, a "Completion Guarantee," provided in pertinent part as follows:

> WHEREAS, Lender has entered said [construction loan] agreement based upon the consideration recited therein and [Imperial Construction's] agreement to provide Lender with a guarantee of lien free completion of the construction. . . .
>
> NOW, THEREFORE, Imperial Group, Limited, agree that they will guarantee the timely and faithful completion of the construction free from any and all liens.
>
> · · ·

This latter document eventually provided the basis for appellees' amended complaints.

In February 1975, prior to completion of construction, the Bank withheld further advances, accelerated the principal balance of the note, and commenced foreclosure proceedings against the property.[4] As an eventual result of these events, appellees were not paid sums due them in accordance with their subcontracts with Imperial Construction. Four separate suits against Imperial Group and Imperial Construction followed.[5] As alternative grounds for recovery from Imperial Group, all of the appellees attempted to prove that Imperial Construction was a mere instrumentality of its parent and that, as suppliers and materialmen of Imperial Construction, they were third party beneficiaries of the Completion Guarantee. As previously indicated, appellees prevailed on the latter theory,[6] and this appeal followed.

As stated in *Harris v. Board of Water & Sewer Comm'rs of Mobile,* 294 Ala. 606, 320 So.2d 624 (1974),

> Alabama law is clear to the effect that one for whose benefit a valid contract has been made, although that person is not a party thereto and does not furnish any consideration therefor, may maintain an action on the contract against the promisor.

320 So.2d at 628. The crucial inquiry involves a determination of intent,[7] and third parties may sue on the contract only if it may be said to have been intended for their direct, as opposed to incidental, benefit. *Anderson v. Howard Hall Co.,* 278 Ala. 491, 179 So.2d 71, 73 (1965); *accord, United States Pipe & Foundry Co. v. United States Fidelity & Guaranty Co.,* 505 F.2d 88, 90 (5th Cir. 1974); *Burgreen Contracting Co. v. Goodman,* 55 Ala.App. 209, 314 So.2d 284, 287, *pet. for cert. stricken,* 294 Ala. 199, 314 So.2d 296 (1975); *Tennessee Coal, Iron & R. Co. v. Sizemore,* 258 Ala. 344, 62 So.2d 459, 464 (1952); *Wolosoff v. Gadsden Land & Building Corp.,* 245 Ala. 628, 18 So.2d 568, 570 (1944). The burden of proving the requisite intent, of course, falls upon the third party. *See Costanza v. Costanza,* 346 So.2d

---

3. At the time of closing, Imperial Construction was a wholly-owned subsidiary of Imperial Group. In June 1975, however, Imperial Group sold all of its interest in the subsidiary.

4. The record indicates that the Bank's actions were precipitated by Imperial Construction's failure to provide evidence that the unadvanced loan funds together with other independent resources would be sufficient to finance the remaining construction. The foreclosure proceedings were eventually carried to fruition.

5. Temp Control's suit was filed in Alabama state court and subsequently removed to the federal district court. Appellee Coleman dismissed his suit against Imperial Construction, proceeded against Imperial Group alone, and eventually foreclosed his lien against Imperial Construction in the Circuit Court of Mobile County, Alabama.

6. The district court resolved appellees' "alter ego or sham" contention in favor of Imperial Group, and no cross-appeal was taken.

7. The "motive" of the contracting parties, on the other hand, is not relevant. *Mutual Benefit Health & Accident Ass'n of Omaha v. Bullard,* 270 Ala. 558, 120 So.2d 714, 723 (1960); *Fidelity & Deposit Co. v. Rainer,* 220 Ala. 262, 125 So. 55, 59 (1929).

1133, 1135 (Ala.1977). His proof, however, is not limited to language appearing on the face of the contract, but also may include testimony as to the circumstances surrounding its making. *See Riegel Fiber Corp. v. Anderson Gin Co.*, 512 F.2d 784, 787 (5th Cir. 1975); *Wolosoff v. Gadsden Land & Building Corp.*, 18 So.2d at 570.

These general principles have been somewhat refined in cases involving suits by materialmen against the surety of a bond. The most frequently cited decision came in *Fidelity & Deposit Co. v. Rainer*, 220 Ala. 262, 125 So. 55 (1929). In that case an unpaid materialman sought damages from the obligor of a bond, which had been conditioned in part upon the principal's "[payment of] all persons who [had] contracts directly with the principal for labor and material." 125 So. at 58. The court affirmed a judgment against the obligor and in doing so announced the following test:

> In dealing with contracts calling for the payment of money to a third person, it is generally declared that, in order for such third person to maintain an action thereon, the contract must be made for his benefit. Much confusion of opinion has arisen as to the meaning of "intended for his benefit."
>
> \* \* \* \* \* \*
>
> Reduced to last analysis, the inquiry is this: Is the *promise* here merely to indemnify him and also *to pay parties furnishing labor and material* to the contractor? . . . As heretofore suggested, [the promisee's] motive is not important, but *has a promise been required that [materialmen] shall be paid*, rather than a promise to protect the owner, if not paid?

*Id.* at 125 So. at 58–59 (emphasis added). That the *Rainer* court equated the requisite intent to benefit materialmen with an express promise to pay such parties was later made clear in *Adams Supply Co. v. United States Fidelity & Guaranty Co.*, 269 Ala.

171, 111 So.2d 906, 911 (1959). *See Mutual Benefit Health & Accident Ass'n of Omaha v. Bullard*, 270 Ala. 558, 120 So.2d 714, 720 (1960). *See generally* Restatement of Security §§ 165, 166 (1941).[8] Our research indicates that the Alabama courts have never permitted an unpaid materialman to proceed as a third party beneficiary of a bond or guaranty in the absence of some proof of a promise to pay.

■ The Completion Guarantee here did not expressly commit Imperial Group to pay materialmen or suppliers such as appellees. Nor was there any testimony from appellees' witnesses that the Bank, as promisee, intended to extract such a promise from Imperial Group. Nevertheless, the district court concluded that the Completion Guarantee "was made for the benefit of the plaintiff[s]." This legal conclusion was bottomed in part upon the following finding of fact:

> [D]efendant Group executed a "Guaranty Agreement" whereby Group guaranteed the repayment of all sums loaned by First National to the Construction Company . . . . Furthermore, *Group assumed and guaranteed the faithful performance of the contracts entered into between First National and the Construction Company. Among the obligations assumed and guaranteed by Group was . . . that the parties thereto would not suffer any liens . . . to be levied on the project.* [emphasis added]

In addition, the court cited *Rainer* for the proposition that it would be improper to assume that the Bank had not been concerned with materialmen in requiring the Completion Agreement and concluded that payment by Imperial Group would in fact beneficially affect appellees. Despite these findings, we think it clear that the judgment of the district court cannot be squared with existing precedent, since appellant did not in the Completion Guarantee promise to pay materialmen.[9]

---

8. The Alabama courts have maintained the distinction between instruments containing express language of benefit and those containing no such language in other contexts as well.

*See, e. g., Anderson v. Howard Hall Co.*, 278 Ala. 491, 179 So.2d 71, 73 (1965).

9. Appellants contend that the court's finding that Imperial Group assumed all of the obliga-

As previously mentioned, the bond in *Rainer* expressly obligated the surety "to pay parties furnishing labor and material to the contractor." 125 So. at 59. Although the court there found a direct benefit to materialmen, it did so in order to "give effect . . . [to the bond] according to its terms." *Id.* The holding in *Rainer* admittedly "was very liberal in favor of the materialmen," *Security Federal Savings & Loan Ass'n v. Underwood Coal & Supply Co.*, 245 Ala. 56, 16 So.2d 100, 103 (1943), and has not yet been expanded beyond its factual boundaries. Indeed, the Alabama court implicitly has rejected any such expansion.

In *Adams Supply Co. v. United States Fidelity & Guaranty Co.*, 269 Ala. 171, 111 So.2d 906 (1959), three corporations entered a contract with Folmar-Flinn Corp. as general contractor for a construction project. Folmar-Flinn in turn entered into subcontracts with Whitehead Plumbing & Heating Co. Whitehead expressly agreed "to pay for such labor, materials and other charges in such a manner that there will be no lien against the General Contractor or the owner." 111 So.2d at 907–908. United States Fidelity & Guaranty Co. executed bonds as surety for Whitehead as principal and Folmer-Flinn as sole obligee. The bonds were conditioned as follows:

> [I]f the said Principal shall well and truly indemnify and save harmless the said Obligee *from the breach of any of the terms, covenants and conditions of the said contract on the part of the said Principal to be performed,* then this obligation shall be void . . . .. [emphasis added]

*Id.* 111 So.2d at 908. Adams Supply Co., an unpaid supplier of Whitehead, brought suit against USF&G as a third party beneficiary of the bonds.

The Alabama Supreme Court affirmed a decision of the lower court that Adams had no right to recovery against USF&G and stated:

> The bonds here involved are conditioned so differently from the bond involved in . . . *Rainer* . . . as to make the holding in that case inapplicable. In the *Rainer* case . . . , Condition Five of the bond was as follows: "Shall pay all persons who have contracts directly with the principal for labor and material, then this obligation shall be null and void . . . .."

*Id.* 111 So.2d at 911 (citation omitted). This holding, in our view, reveals two points. First, words of payment in the document sought to be enforced by a third party are essential to his action. It is also plain that the district court's reliance upon Imperial Group's supposed assumption of all of Imperial Construction's obligations to the Bank cannot alone form a sufficient predicate for finding an intended direct benefit to appellees.[10]

The lender in this case, although it certainly knew that a portion of the loan pro-

---

tions created by the various documents executed by Imperial Construction and the Bank was clearly erroneous. Indeed, the face of the Guaranty Agreement, which concededly must be strictly construed, *see McGeever v. Terre Haute Brewing Co.*, 201 Ala. 290, 78 So. 66 (1918), shows that Imperial Group guaranteed only the note. Although we find some merit in appellants' position, our disposition of the appeal makes it unnecessary to decide the precise question presented.

**10.** The district court also relied in part upon the following quote from *Rainer*:

> We are not impressed with that line of judicial decision which assumes that the owner, the promisee, has no concern for those whose labor and material enter into his building, other than mere protection of himself by way of indemnity. . . . He may want the bond to protect them as an assurance that labor and material will be procured and the work done without delay and confusion. He may require it simply as a just protection to those whose labor and materials enter into his building.

125 So. at 59. The *Rainer* case, however, involved a bond expressly conditioned upon payment to materialmen. Under those circumstances, the condemned assumption would fly in the face of one of the document's express requirements. No such conflict exists under the facts here. Moreover, *Rainer* merely rejects the assumption as a per se proposition and does not command or authorize, in the absence of a promise to pay, the contrary assumption that the obligee in fact had a concern for third parties in exacting the promise.

ceeds would be used to pay for labor and materials, owed no legal duty to the appellees. *See Security Federal Savings & Loan Ass'n v. Underwood Coal & Supply Co.,* 16 So.2d at 103. And while it could easily have done so, did not exact from Imperial Group a promise to pay them. We have little doubt but that the Bank and Imperial Group understood at the time the Completion Guarantee was executed that Group's promise of lien free completion could prove beneficial to subcontractors such as appellees. But that understanding does not justify a further conclusion that the Completion Guarantee was executed for the direct benefit of such persons, as opposed to a mere incidental or consequential benefit. There is no language in the document or testimony concerning surrounding circumstances to substantiate that conclusion.

In summary, we hold that the district court erred in concluding that the parties to the Completion Guarantee intended thereby to confer a direct benefit upon appellees. Accordingly, the judgments entered in favor of appellees are

REVERSED.