Dicon, Inc. appeals from that portion of a judgment awarded against it to The Great Atlantic Pacific Tea Company (A P) wherein it was held to owe $18,324.44 plus interest for air conditioning equipment furnished and installed by A P. We affirm.
On May 21, 1973, A P as lessee and Vankel, Inc. as lessor executed a lease which provided for the construction of an A 
P food store by Vankel as the owner of that store which was to be located in Tillman's Corner in Mobile County. On July 9, 1973, General Construction Company as contractor entered a written agreement with Vankel whereby as a part of a larger construction project it was to build the A P food store on Vankel's property pursuant to plans and specifications prepared by Paul Stewart, architect. Those plans and specifications provided that the air conditioning equipment was to be furnished and installed by A P. Shortly thereafter A P prepared the submitted a set of general specifications and drawings for A P supermarkets to Vankel which were approved by both parties and provided that Vankel as owner was to furnish all the air conditioning equipment to be used in the building. These general specifications stated that they were to be used for negotiating the contract between A P and the store owner and not for construction purposes. General apparently was aware of this agreement and thereafter it and A P entered into an oral arrangement whereby A P would provide and install the air conditioning equipment and General would repay A P. After partially performing its contract obligations, General defaulted and discontinued work on the project.
Pursuant to an agreement between Vankel and General's surety, the Travelers Indemnity Company, on July 24, 1974, a construction contract between Vankel and Dicon as the completion contractor was executed. That contract provided that Dicon was to perform the uncompleted construction work described in the architect's specifications, was not obligated to pay General's unpaid bills, and could use without any charge such materials as were on the job site to complete the work. At the time Dicon came on the job site in August, 1974, to begin work, the air conditioning equipment was there but had not been installed. Dicon later, during the progress of the *Page 20 
work, requested that A P complete installation of the air conditioning equipment.
On December 31, 1974, Herman Maisel, President of Vankel, was sent an invoice by A P for the cost of the purchase and installation of the air conditioning system in the store. A P advised Maisel that they would not open the store until the air conditioning was paid for. Maisel guaranteed refund of payment if Dicon would not pay. Dicon was sent a copy of the invoice sent Maisel accompanied by a cover letter dated February 7, 1975.
After considerable dispute as to what amounts were owed to whom, A P filed a complaint on May 14, 1975, claiming $29,293.00 for materials, labor, and supplies furnished by it to defendants Dicon and General, for use in buildings on the property owned by defendant Vankel. It also claimed a lien on Vankel's property in the above amount. After Dicon's motion to dismiss was denied, it filed an answer containing a defense of setoff for extras if furnished to A P in constructing the food store and a counterclaim for those extras in the amount of $16,510.65. General was never served with process.
The case was tried to a judge sitting without a jury and a directed verdict was granted for Vankel on all claims except the lien claim. The court entered findings of fact and a judgment denying A P's lien claim against Vankel's property but decreeing that A P recover from Dicon $28,950.24 less an offset due Dicon of $7,026.82 for a balance of $21,923.42 plus interest. Dicon appeals only from that portion of the judgment concerning the air conditioning equipment.
Dicon asserts on appeal that it is not contractually responsible for payment to A P for the air conditioning equipment furnished and installed by A P. Specifically, Dicon complains the trial court erred in its finding of fact that Dicon acquiesced in or ratified the agreement between A P and General regarding the furnishing and installation of the air conditioning equipment. It also argues that its agreement with Vankel expressly precluded it from any obligation to pay any of General's unpaid debts rather than obligated it to do so as the trial judge stated.
Dicon's construction contract with Vankel provided:
"CONSTRUCTION CONTRACT
 "THIS AGREEMENT, made and executed this 24th day of July, 1974, by and between DICON, INC., a Mississippi corporation (hereafter `CONTRACTOR'), and VANKEL, INC., an Alabama corporation (hereafter `OWNER'), is as follows:
 "WHEREAS, on July 9, 1973, OWNER and GENERAL CONSTRUCTION CORPORATION (hereafter `GENERAL'), entered into an `Agreement' under the terms of which GENERAL was to construct shopping center buildings and related improvements in Mobile, Alabama, for the lump sum price of $452,740.00 according to the plans and specifications dated May 22, 1973, and prepared by Paul F. Stewart, architect; and * * *
 "WHEREAS, it is the intent and purpose of this agreement to set forth the terms and conditions under which CONTRACTOR will perform the contract work obligations of GENERAL under the agreement of July 9, 1973, described above.
 "NOW, THEREFORE, for and in consideration of the mutual covenants and conditions set forth herein, the parties agree as follows:
 "1. CONTRACTOR shall furnish and pay for all labor, material and equipment and perform the uncompleted construction work described in the plans and specifications prepared by Paul F. Stewart, architect, dated May 22, 1973, (consisting of specifications pages 1 through ____ * See attached Exhibit `A' and consisting of pages _____), * * *
 "2. In consideration for the labor, material and work to be furnished and performed by CONTRACTOR, OWNER shall pay to CONTRACTOR the sum of $345,000.00, subject to additions and deductions *Page 21 
by change orders. The contract price set forth above does not include or obligate CONTRACTOR to pay the purported unpaid bills of GENERAL. CONTRACTOR shall have the right, without any charge by OWNER, to use such materials as are available on the job site and the previously performed work in completing its obligations hereunder."
The trial court in its findings of fact quoted the following language from the contract:
 "WHEREAS, it is the intent and purpose of this agreement to set forth the terms and conditions under which CONTRACTOR will perform the contract work of GENERAL under the agreement of July 9, 1973, described above."
Dicon contends that language was in the nature of a preamble to the contract, a statement of background, and that the language in Finding No. 2 that it was not obligated to pay the purported unpaid bills of General and it could use without charge any materials available on the job site when it arrived, was more pertinent. It bases this argument on language in ManchesterSawmills Co. v. A.L. Arundel Co., 197 Ala. 505, 73 So. 24
(1916), where Justice Somerville states "[a]ll the provisions of a contract must be construed together so as to give harmonious operation to each of them, so far as their language will reasonably permit."
However, even if Dicon was not bound to pay for the air conditioning equipment by its contract with Vankel, this would not preclude its acquiescence in or ratification of General's agreement with A P regarding the air conditioning, as was also found by the trial court as a basis for its finding that Dicon was contractually responsible:
 "Furthermore, the Court finds that Mr. Roger Perret, an employee of the Plaintiff, discussed the matter of the air conditioning with representatives of Dicon, and Dicon's acquiescence in the arrangement between the Plaintiff and General amounts to a ratification of said agreement. Therefore, the Court finds that Dicon is contractually responsible to the Plaintiff for the cost and installation of the air conditioning equipment in the sum of $18,324.42."
To the extent ratification and acquiescence are factual questions, having heard the case ore tenus, the trial court's resolution of these issues is given a presumption of correctness and will be disturbed on appeal only if shown to be plainly erroneous or manifestly unjust. E.g., Tanner v.Winfield, 365 So.2d 651 (Ala. 1978); Russell v. Russell,361 So.2d 1053 (Ala. 1978); Knighten v. Davis, 358 So.2d 1022 (Ala. 1978); White v. White, 350 So.2d 326 (Ala. 1977). The judgment is due to be affirmed if, under any reasonable aspect, it is supported by any credible evidence. Raidt v. Crane,342 So.2d 358 (Ala. 1977). In this case the trial court heard testimony setting forth considerably different versions of the contractual relationship between Dicon and A P. Mr. Ramsey, President of Dicon, testified that he never told A P or anyone at Vankel he would pay for the air conditioning equipment. Richard Tucker, Dicon's project manager for the Tillman's Corner store, stated that he did not agree to pay for the purchase or installation of the air conditioning equipment. He testified later, however, that somewhere down the line he learned of the General-A P agreement but "not at the front end." He also stated that he had some discussion with Mr. Perrett about A P furnishing and installing the air conditioning but could not recall the details of the conversation. Mr. Perret, A P's regional director of design and construction in the Southeastern Region, who was in charge of the Tillman's Corner store on A P's behalf, testified that Dicon requested that A P secure the same equipment it had furnished in Bogaloosa for the Tillman's Corner store, as Dicon was the completion contractor in place of General on both jobs. He further stated that Dicon asked that A P complete installation of the air conditioning equipment on the job site. A letter dated February 12, 1975, in which Mr. Herman Maisel, President of Vankel, guaranteeing payment for the air *Page 22 
conditioning equipment if Dicon did not pay, wrote A P stating, "I am sorry there has been a delay in getting Dicon, the contractor, to pay this bill" (concerning the air conditioning equipment) was admitted into evidence. Dicon was sent a copy of the invoice sent to Maisel and a cover letter. In view of the disputed evidence regarding whether Dicon was to pay for the air conditioning equipment, we cannot say that the trial judge who had the opportunity to hear all the testimony of the witnesses and observe their demeanor entered a judgment that was plainly erroneous or manifestly unjust.
AFFIRMED.
TORBERT, C.J., BLOODWORTH and EMBRY, JJ., and TYNER, Retired Circuit Judge sitting as Special Justice, concur.