EMBRY, Justice.
This is an appeal from a final judgment entered after a nonjury hearing of this case which involves a dispute between Davis Construction Company, Inc., a corporation, and The Medical Clinic Board of the City of Falkville, Alabama, a corporation, and the Falkville Nursing Home, Inc., a corporation. There were other parties to the action as defendant, third-party plaintiff, fourth-party plaintiff and as cross-claimant. The latter parties were only incidentally involved and the vortex of the action is the dispute between the construction company and the Clinic Board and Nursing Home or Rest Home.
The final judgment in this case denied relief on the claims of the plaintiff construction company and the counterclaims of the Clinic Board and Nursing Home. In essence, it left the parties as they were before trial of the action. We affirm.
This was a very complex case factually. There was voluminous oral testimony and documentary evidence, all hotly disputed with the exception of that which was the subject of a stipulation entered into in an effort to aid the trial court by eliminating the necessity of its hearing evidence about matters not in dispute. The learned and experienced trial judge obviously gave full consideration to all the evidence and careful attention to an analysis of it. This resulted in the following findings and judgment entered 24 July 1980:
“This action is submitted in open court for final judgment after oral hearing of the evidence supplemented by a stipulation of the parties which is of record. Prior to the commencement of the trial of the case the Court in pre-trial conference with the attorneys determined that the plaintiff, Davis Construction Company, a corporation, filed its complaint against the defendants, The Medical Clinic Board of The City of Falk-ville, Alabama, a corporation, Falkville *382 Nursing Home, Inc., a corporation, and Central Bank of Alabama, N. A., A National Banking Association. The complaint, after amendment, claims $45,399.87 with interest from January 10, 1975 for work and labor done and buildings and improvements constructed for the operation of a rest home in Falkville, Alabama. It is claimed that the work and services were furnished at the request of The Medical Clinic Board of The City of Falkville, Alabama under a written contract and change orders under this contract. The Medical Clinic Board of the City of Falkville, Alabama owns certain real estate which is the subject of this suit in Falkville, Alabama on which a rest home is located. The rest home is leased to the defendant, Falkville Nursing Home, Inc. In June 1973, or prior thereto, it was determined by The Medical Clinic Board and the Nursing Home that the building which they occupied should be renovated, and a new building should be constructed. The Medical Clinic Board decided to finance this operation by a bond issue, which was accomplished. A contract for construction and renovation was entered into by the plaintiff, Davis Construction Company, and the Medical Clinic Board of The City of Falk-ville, and this contract was approved by the Falkville Nursing Home. This contract is Exhibit A to the stipulation. The parties disagree as to whether or not this contract covers both the renovation of the old building and the construction of the new building, and this is one of the issues of the case. The new building was completed sufficiently for the patients to occupy, but there are disagreements with reference to the entire completion; there are also disagreements as to completion of the work on the renovation of the old building.
“In addition to the money claimed by the plaintiff, there is a claim for a statutory lien against the real estate to secure the payment of any balance due. The defendants deny the right of recovery of the plaintiff of any amount, and the defendants, Medical Clinic Board and Falkville Rest Home, file a cross claim against the plaintiff alleging overpayment in the amount of $8,000.00. They, also, file a third-party suit against American Fire and Casualty Company alleging that they provided the performance bond for the plaintiff, and they claim that they are liable for any balance due to be refunded to the defendants under the terms of the performance bond. This third-party defendant filed a fourth-party complaint against the original plaintiffs alleging that under the terms of an indemnity agreement between them and the plaintiff contractor and certain individuals, (apparently family members of the owners of the stock in the plaintiff construction company), the performance bond surety is entitled to a judgment against the fourth-party defendants for any amount which is adjudged against the performance bond surety. Some of the fourth-party defendants answered, and others suffered a default. There is no issue between the parties relative to the fourth-party complaint it appears. All defendants, except the ones specified with reference to the fourth-party claim, deny the claims of the ones making complaint against them to recover.
“The Court determines the issue to be: 1. What was the contract between the parties? 2. Did the building contractor, the plaintiff, and The Medical Clinic Board of Falkville, Alabama, and The Falkville Rest Home substantially perform their respective obligations under the contract? 3. In what respect did either of the parties named in Item No. 2 fail to perform the contract, if any? 4. What materials and services were furnished by the plaintiff and accepted by the Board and Home, and what is the reasonable value of the same? 5. What credits are due, and what charges should be made against each of the original parties to the contract? 6. Did the plaintiff comply with the statutory requirements for the establishment of lien against the real estate? 7. Priority of the claims between Central Bank of Alabama and the plaintiffs, if any amount is found to be due to the plaintiffs.
“The court finds that American Fire and Casualty Insurance Company, who is a third-party defendant, and who was the surety on the performance bond of the plaintiff, was never notified of any default *383 on the part of the plaintiffs until the answer of the defendants was filed in this case. The Court further finds that the construction contract, the performance of which this surety guaranteed was substantially modified so as to increase the risk of this surety without the consent of the surety. THEREFORE, IT IS ORDERED that judgment is hereby entered in favor of American Fire and Casualty Insurance Company, the third-party defendant in this case, and said defendant is hereby stricken as a party. This eliminates also the fourth-party claim by this third-party defendant except for the claim for attorneys’ fees. This issue is hereby reserved by the Court leaving only the issue between the original parties, and the question of the priority of the lien, if any, between the plaintiff and the Bank for decision at this time.
“There is a stipulation of record in this case consisting of ten pages. Among other things, it identifies and agrees to admissibility of the plans and specifications, the performance bond and other documents connected with the construction contract. It also stipulates that the surety on the performance bond was never notified of any default of the plaintiff building contractor or of any amendment of the contract between the plaintiff and the Medical Clinic Board and the Nursing Home. It further stipulates that no claim was ever made against the surety on the performance bond until after this case was filed; it also stipulates that the premium paid for the surety bond was not sufficient to cover the new contract between the owners of the land and the building contractor. It sets out certain payments were made to the plaintiff on the contract at various times totaling $370,208.36. It should be noted that this amount does not include other credits on the contract; there appears to be under the stipulations ‘deductive change orders for materials paid on the contract by or on behalf of the * * * (Medical Clinic Board and Rest Home).’ These payments amount to $258,226.97; there are three other contested deductive change orders not contained within this total. They amount to several thousand dollars. The stipulation also provides that $628,435.33 was paid by the Rest Home or The Medical Clinic Board to the plaintiff building contractor or (and) for the materials used on the contract.
“The original written contract was executed by the parties on the 29th day of June, 1973. The plaintiff claims that this contract was never intended to cover any work on the old building, but that it was confined to the construction of the new building. The defendants contend that the work on the old building and the construction of the new building was one contract, and that it was all included in this contract and oral amendments thereto. One of the more complicating features of this case is the fact that it is undenied that the written contract was executed prior to the plans and specifications for the construction of the new building. There were only preliminary plans with reference to the renovation of the old building at the time of the execution of the contract. The architect, in his testimony, states that a representative of the plaintiff, its President, was competent to estimate the cost of these jobs without specific plans within reason. Under this state of the record, it is necessary to determine the provisions of the agreement between the parties (if possible) from oral agreements which were made from time to time during the progress of the work, few of which were made at the same time, and many of which involved disputes between the parties. The general condition of the contract (Exhibit B to stipulation) provides for written change orders by owners and architects directed to the contractor, (Article 12); plaintiff’s Exhibit 14 and 15 are change orders signed only by the contractor. The two are in excess of $12,000.00. The parties made oral agreements between themselves without advising the architect, and often with no record being made of the changes. There are change orders in the record which increase the contract price, but the Court finds no change order recorded which gives credit on the contract price, yet it is undisputed that there were many such changes. One of the changes involved at least $30,000.00; this eliminated a swim *384 ming pool and a building to be used in connection with the swimming pool. The amount of credit due by reason of this change is disputed. There were other changes in the plans apparently cutting down the amount of work which was required in the renovation of the old building. The evidence is not specific with reference to these items. The plaintiff contends that the preliminary plans for the renovation of the old building were drastically different from the final plans in that there was included in the final plans more work to be done, and that the plaintiff could not perform the work without additional money. The plaintiff stated that it would require in excess of $111,000.00 to do the extra work on the old building, but the evidence is lacking as to whether or not there was an agreement concerning this amount, and if there was no agreement, the evidence is lacking as to the reasonable value of any extra work performed. There was only one written contract; this is the one mentioned above herein. If the work on the old building is not a subject of this contract as contended by the plaintiff, the entire contract of the renovation of the old building is oral, or is an oral contract modified by written change orders. The architect is unable to clarify the terms of the agreements between the parties to the construction contract, because he was not kept informed as to all of these terms.
“The defendants contend that there was an agreement for remodeling the reception area of the old building, a provision for re-covering the floors of the old building with new tile, remodeling the front entrance of the old building and dining room and medicine room, none of which was performed by the plaintiff. They also claim that they paid for labor on this job which was used on another job which was in progress under the supervision of the plaintiff at the same time. They also claim that materials were taken from this job to another job, and that a large quantity of doors were taken from this job to a warehouse in possession of the plaintiff, and that they did not receive credit for these items; they also claim that an office building was constructed by the plaintiff on the job from material paid for by the Medical Clinic Board and The Rest Home, and that this building was removed from the premises when the plaintiff left the job; it is also contended that certain building blocks which were paid for by the Board and Home were removed from the job without credit being given for them. The plaintiff denies some of these claims, and admits some of them, and offers a credit against their claim for certain specified items, but the defendants do not accept the offers of credit, and the Court is left to determine which if either of the credits should be given, and the value of the same. The evidence is not sufficient on which to base judgment as to some of the items.
“Liability for an amount due under a contract or quantum meruit cannot be established on less than reasonably convincing evidence as to liability and the amount involved. Though the amount involved does not affect the application of this rule, one becomes more conscious of the rule where very large amounts of money are involved and where there are no records of specific transactions in an operation in which it is expected that there would be complete records of every transaction. Reliability of evidence which must be based on memory involving hundreds if not thousands of transactions, and on which the parties disagree is materially affected. The Court is of the opinion that the plaintiff has failed to meet the burden of proof which is required to introduce evidence which reasonably satisfies the trier of the facts of liability and the amount due under their contentions. The same applies to the counter-claim of the counter-claimants.
“THEREFORE, the Court concludes that the claims of the plaintiff and the counterclaims of the counter-claimants should be denied and the same [are] hereby ORDERED.
“What has been said above makes the issues between the plaintiff and the defendant, Central Bank of Alabama, moot. As between the parties to this suit, the lien of the Bank is not impaired. IT IS THEREFORE ORDERED that the plaintiff pay *385 one-half of the cost of this proceeding, and the defendants, Medical Clinic Board and Falkville Nursing Home together pay one-half of the cost of this proceeding.
“In accordance with Rule 54(b), ARCP, IT IS HEREBY ORDERED that there is no just reason for delay, and judgment is hereby entered as ORDERED herein. All such judgments are hereby declared to be final as between the parties.”
In essence, Davis Construction contends the written contract between the parties only governed construction of the new building. It argues that the price agreed upon in the contract did not include renovation work on the old building. Thus, Davis Construction seeks the value of the work completed in renovating the old building. The company’s basic contention is that the only way the trial judge could deny it relief is to offset the amount due it under the counterclaim of the Nursing Home. Davis Construction further contends the Nursing Home’s counterclaims are not supported by reasonably convincing evidence, according to Davis Construction the trial court’s findings and judgment are based on speculation and must be reversed.
At trial, the Nursing Home contended it owed no debt to the construction company. Furthermore, the Nursing Home asserted a counterclaim for various projects not constructed by appellant which the Nursing Home claimed appellant agreed to construct. Although the trial court refused to permit recovery on its counterclaims the Nursing Home asserts the judgment of the trial court should be affirmed and has not cross-appealed from that part of the judgment denying it relief.
The single issue dispositive of this appeal is whether the trial court’s conclusions of fact are palpably wrong or against the great weight of the evidence. The longstanding rule in Alabama is well-stated by Justice Lawson in Adams Supply Co. v. United States Fidelity & Guaranty Co., 269 Ala. 171, 111 So.2d 906, 911 (1959):
For emphasis, we refer to the favorable presumption of correctness attending the trial court’s conclusion on issues of fact where the evidence is taken in the presence of the court. Under such circumstances we will not disturb the trial court’s conclusion on issues of fact unless palpably erroneous and against the great weight of the evidence; and it is not necessarily what view the appellate court might have of the evidence, but if under any reasonable aspect the decree below is fairly supported by credible evidence, it is our duty to affirm....
See Rule 52, ARCP, Committee Comments ¶ 3; Dicon, Inc. v. Great Atlantic & Pacific Tea Co., 381 So.2d 18 (Ala.1980); Smith v. McNaughton, 378 So.2d 703 (Ala.1979); Tanner v. Winfield, 365 So.2d 651 (Ala.1978).
In the trial below, the evidence was taken ore tenus. The trial court saw and heard the witnesses and weighed their credibility. The parties introduced conflicting evidence of what the agreement between the parties was and how it was modified. There was a wide variance of testimony concerning the value of completed work, as well as the value of deleted items of work. In light of this conflicting evidence, we cannot say the trial court’s judgment is not based upon credible evidence. The judgment is therefore due to be and is hereby affirmed.
AFFIRMED.
TORBERT, C. J., and FAULKNER, AL-MON and ADAMS, JJ., concur.